COMMONWEALTH *vs.* HUMPHREY LANE.

Suffolk.   October 23, 1925. — November 24, 1925.

Present: RUGG, C.J., BRALEY, CROSBY, CARROLL, & SANDERSON, JJ.

*Larceny. Practice, Criminal,* Conduct of trial: assistance to district attorney by counsel for complaining witness, Appeal.

At the trial of an indictment in seventeen counts against a minor twenty years of age employed as a note teller in a bank and two others for larceny of sixteen sums of money from the bank on as many different dates, the entire amount of the larceny charged being $127,500, the minor pleaded guilty and testified for the Commonwealth, and there was evidence that the other two defendants were bookmakers, that the bank employee had placed funds through them, that they knew of his connection with the bank and knew that money which he paid them was money of the bank.   *Held,* that the acts of each defendant in carrying out the common scheme were the acts of all the confederates, and that a verdict of guilty against all was warranted.

It was within the discretion of the judge presiding at the trial of an indictment to deny a motion for continuance filed during the trial based upon

the fact that the assistant district attorney who had active superintendence and management of the prosecution of the trial on behalf of the Commonwealth was assisted by a member of the bar, not officially connected with the office of the district attorney, who was familiar with the facts in the case and had assisted in its preparation; who sat with the assistant district attorney at the trial and gave him suggestions during its progress; and who, though previous to the date of the filing of the motion he had expected compensation for his services in the preparation and trial of the case, received none and at no time actually directed the trial, did not address the court except at the bench in conference, and then only at the express wish or with the implied consent of the judge.

INDICTMENT, found and returned on October 7, 1922, in seventeen counts charging Paul Downey, Humphrey Lane and Robert L. Finn with larceny from Federal Trust Company on sixteen dates, beginning July 19 and ending September 14, 1922, of sums of money varying in amount from $1,500 to $25,000, and amounting in all to $127,500.

The indictment was tried in the Superior Court before *Bishop*, J. The defendant Downey pleaded guilty and testified for the Commonwealth. It appeared in evidence that he was twenty years of age. Other material evidence and a motion by the defendants for a continuance are described in the opinion. The trial was begun on February 14, 1923. The motion for continuance was heard on February 21 and was denied. At the close of the evidence, the defendants moved for the entry of verdicts of not guilty. The motions were denied. The defendants were found guilty on all counts on February 24, 1923. The defendant Lane alone alleged exceptions.

The case was submitted on briefs.

*W. R. Scharton*, for the defendant.

*M. Caro*, Assistant District Attorney, for the Commonwealth.

CARROLL, J. The indictment in seventeen counts charges the defendants Downey, Finn and Lane with larceny. It was tried with another indictment alleging that Finn kept a room for the registering of bets. Downey pleaded guilty. Finn was found guilty and waived his exceptions. The case is before us on Lane's exceptions.

The Federal Trust Company at the time of the alleged offences was a banking institution, in Boston. Downey was employed by it as a note teller. There was evidence tending to show that Lane and Finn were bookmakers engaged in the business of placing bets on horses; that Downey made his first bet on the horses with Lane in April, 1921; that Lane at that time was making a book for one Coleman; that Lane, when Downey was introduced to him, was told that Downey was employed at the Federal Trust Company, and Lane said "All right . . . you can register the bets with me and that will not cloud, cast any suspicion on you on account of being employed in the bank"; that later, Lane told Downey to meet him once or twice a week and in that way Downey would not be seen in Lane's company by people who knew Downey was employed by the bank; that at this time Downey's bets were about $30 or $40 a week; that in September, 1921, Lane introduced Downey to the defendant Finn, saying to Finn, "I want to introduce you to Paul Downey. He works in the Federal Trust Company" and Finn said "Instead of you meeting Lane you can call me up . . . and then make the settlements with Lane afterwards"; that at this conversation Downey informed Finn and Lane that one Coleman, by whom Lane was formerly employed, had "tipped off one of the tellers in the bank that I was betting $500 or $600 a week on horses with him and he knew that I didn't have that money to bet, and it must have been the bank's money. Lane in reply said to me, 'Well, I am not surprised'. . . . Finn said to me, 'You don't have to worry; any business you do with me will be only known to Finn and Lane'"; that at this time he was betting approximately $30 a day with Finn. Downey further testified that he paid Finn in cash and in treasurer's checks of the Federal Trust Company; that these checks were made out by Downey, payable to Finn, were signed by an officer of the trust company, and charged to customers' accounts; that at times he made bets with Finn of from $500 to $1,500 a day, and at other times as high as $20,000 a day; that he continued this practice until the day of his arrest; and that he paid Finn in cash and checks $127,500.

Without reciting the evidence in detail, it shows that Lane knew Downey was employed by the Federal Trust Company; that Lane and Finn encouraged Downey to make these large bets and they knew that Downey was using the funds of the trust company and making treasurer's checks of the company for large sums of money, payable to Finn, in settlement of Downey's gambling debts. In carrying out this common purpose, the defendant Lane with the other defendants could have been found guilty of larceny of the money of the bank. *Commonwealth* v. *King,* 202 Mass. 379, 387. *Commonwealth* v. *Althause,* 207 Mass. 32, 45.

The three defendants acted together in a scheme to steal from the trust company. This was accomplished by using its money and manipulating the treasurer's checks so that larceny at common law and by false pretences was committed. The act of each one in the carrying out of this scheme was the act of all the conspirators. See *Commonwealth* v. *Harley,* 7 Met. 462. *Commonwealth* v. *Mulrey,* 170 Mass. 103. *Commonwealth* v. *Carey,* 103 Mass. 214, upon which the defendant relies, is not in conflict.

The defendant moved that the case be taken from the jury and continued, because Edward L. Logan, Esquire, an attorney at law, represented the prosecution in the trial of the cause. This attorney was familiar with the facts in the case and had assisted in its preparation; he sat with the assistant district attorney at the trial, and gave him suggestions during its progress. The judge found that the assistant district attorney "had the active superintendence and management of the prosecution of the trial"; that Mr. Logan received no pecuniary compensation for his services in the preparation and trial of the case; that prior to February 21, he expected compensation for these services; that at no time did he actively direct the trial; that he did not address the court except at the bench, in conference, and then only at the express or implied consent of the court. There was nothing improper in the conduct of Mr. Logan. The assistant district attorney had the entire control of the case, he had the right to avail himself of the knowledge and information possessed by Mr. Logan. *Commonwealth* v. *Herman,* 253

Mass. 516, and cases cited.   There was no error in the conduct of the trial.

The appeals are not properly here.   G. L. c. 278 § 28. All questions of law sought to be presented thereby were raised by the exceptions and have been considered.

*Exceptions overruled.*
*Appeals dismissed.*