COMMONWEALTH *vs.* ERNEST C. STASIUN & others.

Bristol.   November 2, 1964. — April 22, 1965.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, KIRK, & REARDON, JJ.

*Bribery. Conspiracy. Evidence,* Of bribe, Of conspiracy, Acts and dec-
larations of conspirator. *Pleading, Criminal,* Indictment. *Practice,
Criminal,* Venue.

A private citizen properly may be convicted under a joint indictment
charging him and a public officer with soliciting a bribe from a third
person in violation of G. L. c. 268, § 8, if the private citizen partici-
pated in the commission of the offence.   [43–44]
An indictment charging that a defendant, "then an executive officer of the
Commonwealth," and two other named defendants "at various times
between . . . [two specified dates about six months apart], the exact
dates being to the . . . jurors unknown . . . and as part of the same
transaction . . . did corruptly request gifts and gratuities and prom-
ises to make a gift from . . . [a fourth person] under an agreement
and with an understanding that the vote . . . of the . . . [executive
officer] would be given in a particular manner and on a particular side
of a question . . . brought before him in his official capacity," did not
charge a continuing offence of a general practice of soliciting bribes but
charged a single offence, solicitation of one bribe for a favorable vote
on one specific matter, and set forth a crime under G. L. c. 268, § 8
[44–45]; KIRK, J., dissenting.
Conviction of an executive officer of the Commonwealth and two private
citizens of a single offence of soliciting a bribe from a fourth person in
violation of G. L. c. 268, § 8, was warranted at the trial of a joint in-
dictment by evidence that over a period of several months one of the
private citizens on one occasion, the executive officer on a later occa-
sion, and the other private citizen on a still later occasion each re-
quested the fourth person to pay money to the executive officer for his
official vote for approval of a certain lease, even though the executive
officer was not present when the private citizens made their requests
[45–46]; KIRK, J., dissenting.
At the trial of a joint indictment against an executive officer of the Com-
monwealth and two private citizens for a violation of G. L. c. 268, § 8,
by soliciting from a fourth person, on divers occasions between two
dates specified, a bribe for the executive officer's official vote for ap-
proval of a certain lease, evidence of a solicitation by one of the private
citizens on a date preceding the earlier date specified in the indictment
was admissible against him.   [46–47]

Mere participation in a conspiracy to solicit a bribe would not warrant conviction of a conspirator of the substantive offence of solicitation if he did not participate in the solicitation. [47–49]

At the trial of an indictment for conspiracy between two specified dates against two defendants who participated in a relevant episode at a hotel a few days before the earlier date specified and against a third defendant who joined the conspiracy at a later time, evidence of such episode was properly admitted against all three defendants. [50]

At the trial of an indictment against a public officer and two private citizens for conspiracy to solicit a bribe from a fourth person in violation of G. L. c. 268, § 8, evidence of an episode at a hotel involving the officer, one of the private citizens, and the fourth person warranted an inference that the officer and that private citizen conspired together and justified denial of their motions for directed verdicts; and evidence, admissible against the other private citizen, of his acts and declarations at a later date sufficiently linked him to the conspiracy to justify denial of his motion for a directed verdict. [51]

A defendant indicted for conspiracy was sufficiently linked with the conspiracy by evidence, admissible against him, of his own acts and declarations, so that as to him there was no error on the part of the trial judge in making a preliminary finding that a conspiracy existed and that the defendant was a member of it, and in admitting in evidence as against him acts and declarations of two other conspirators indicted and tried with him. [51–52]

At the trial of an indictment against three defendants for conspiracy to solicit a bribe from a fourth person in violation of G. L. c. 268, § 8, there was error, prejudicial to two of the defendants, on the part of the trial judge in making a preliminary finding that the third defendant was a member of the conspiracy and in admitting in evidence against the two defendants incriminating acts and declarations of the third defendant where there was no evidence apart from his acts and declarations that he conspired with the other two defendants. [52–53]

A petition for leave to proceed against one of several defendants pursuant to G. L. (Ter. Ed.) c. 277, § 57A, by the Attorney General, alleging that he was in doubt as to whether such parts of indictments of them for solicitation of a bribe and for conspiracy to solicit it as pertained to that defendant set forth crimes committed within the county in which the indictments were returned, was properly allowed on the ground that "alleged actions of . . . [that defendant in another county] were all part of the same alleged scheme for the solicitation of a bribe . . . , the essential locus of which scheme" was in the county where the indictments were returned. [53–54]

An indictment for conspiracy may be returned in any county in which an overt act is committed by any one of the conspirators in execution of the common scheme, even though a defendant may never have been within that county during the continuance of the conspiracy. [54]

INDICTMENTS found and returned on September 11, 1963. Motions to quash the indictments and motions to dismiss

by the defendants, and a petition as to venue by the Attorney General, were heard by *Cahill*, J.

A plea in abatement was heard by *Sgarzi*, J., and the indictments were tried before him.

*Frederick T. Doyle* for the defendant Ernest C. Stasiun.

*Joseph J. Padellaro* for the defendant Michael J. Manning.

*John D. Sheehan* for the defendant Richard B. Rymszewicz.

*Walter Jay Skinner*, Assistant Attorney General (*Richard W. Murphy*, Special Assistant Attorney General, with him), for the Commonwealth.

SPALDING, J.  These are appeals from convictions under two indictments.  In one (hereinafter called the solicitation indictment) Ernest C. Stasiun, Michael J. Manning and Richard B. Rymszewicz were charged with the offence (G. L. c. 268, § 8) of soliciting a bribe from Paul R. Vermette to influence Stasiun's official action as a member of the Executive Council.  In the other (hereinafter called the conspiracy indictment) the same defendants were charged with conspiring to commit the offence charged in the solicitation indictment.  The trial, which was subject to G. L. c. 278, §§ 33A–33G, resulted in verdicts of guilty on each indictment against all the defendants.  All appealed.

There was evidence of the following.  Early in January, 1959, Paul Vermette, a resident of New Bedford, learned that a change of quarters for its New Bedford office was being contemplated by the registry of motor vehicles.  On January 12 Vermette talked with one MacDonald, who was in charge of the New Bedford registry office, and proposed to lease to the registry a portion of a building which he was about to construct on Kempton Street.  A week later Vermette, MacDonald and two other registry employees, Clark and Riley, went to the Boston office of the registry to discuss Vermette's proposal with Alfred Devine, a deputy registrar who supervised the leasing of district offices.  In the course of the discussion, Devine suggested that Vermette communicate with his Governor's Councillor "back home" because leases had to be approved by the Council.

Upon returning to New Bedford, Vermette, MacDonald, Clark and Riley called at the office of the defendant Stasiun, a member of the Governor's Council from the First District, which included New Bedford, for the purpose of discussing the proposed lease. After the details of the lease had been explained to him, Stasiun told Vermette that "he would go with . . . [them] all the way."

A few days later, Stasiun called Vermette on the telephone and told him that he would like to see him in Boston to "talk about the lease." On January 27 Vermette, accompanied by a friend, Arthur Powell, called on Stasiun at his room in a Boston hotel. The defendant Manning was with Stasiun when they entered the room. Manning and Stasiun had known each other for four or five months. Manning had advised Stasiun in connection with his campaign for election to the Council and had written speeches for him. Stasiun asked Vermette whether Powell was a partner and Vermette replied that he was "just a friend." Stasiun then produced a bottle of whiskey and telephoned room service for ice and soda. When it arrived, Stasiun prepared drinks for Vermette and Powell. Stasiun then asked Powell to go downstairs with him to have a drink at the bar. Powell stated that he already had one but Stasiun said that it was not his "type" and they both departed for the bar, leaving Manning and Vermette alone together in the room. Manning then said to Vermette, "What we want from you now is a thousand dollars, and five hundred dollars when your building is complete, or you won't get your lease." Vermette refused. Manning then told Vermette that "politics were cruel and brutal, and campaigns and elections cost money." Stasiun and Powell returned a few minutes later. Their conversation at the bar was general and had nothing to do with the lease. As they entered the room, Vermette was heard to say, "Like hell; I'm not paying no fifteen hundred dollars." Turning to Powell, Vermette said, "Let's get out of here," and they both left.

Late in February, Vermette, in response to a telephone call from Stasiun, went to see him in his New Bedford of-

fice. Stasiun told him that he was upset because he had heard that Vermette had been to a party and "had said nasty things about him, about the fact that he had asked . . . [Vermette] for fifteen hundred dollars." Vermette replied, "Well, that's too bad. That's what you did." Thereupon Stasiun took a slip of paper and wrote the figure "8" on it and showed it to Vermette, saying, "Pay me this. I'll see that you get your lease tomorrow. And if you don't give me a commitment tonight, I'll see that you never get your lease." Vermette left, slamming the door.

During this period Vermette was negotiating the details of the proposed lease with the registry of motor vehicles. A lease, dated February 27, 1959, was drawn up for a five year term, beginning July 1, 1959. On March 2, the lease was sent to Vermette for his signature. He signed it and "sent it back into Boston." The executed lease was forwarded to the Governor and Council with a covering letter, dated March 6, from the acting State superintendent of buildings recommending its approval.

The matter of the lease was first placed on the agenda of a meeting of the Council held on April 2, 1959, and it was voted that it be "held." On April 9, it was again "held." On May 14 the subject appeared on the agenda and Stasiun moved and voted for its rejection; the motion did not carry. On May 21 one of the Councillors moved that the lease be approved, but this motion was defeated, Stasiun and four other Councillors voting against the motion.

At a meeting of the Council early in June, Devine, deputy registrar of motor vehicles, spoke in favor of the lease. While Devine was being questioned by a member of the Council, Stasiun left the room, stating that "he didn't want anything done about the lease in his absence."

On a Friday in late May or early June Stasiun called Vermette on the telephone, but Vermette hung up before there was an extensive conversation. On the afternoon of the following day the defendant Rymszewicz, a cousin of Stasiun, called on Vermette and said he wanted to talk with him. Vermette was acquainted with Rymszewicz but they

were not intimate.    In the course of the ensuing conversation, Rymszewicz said, ''What's wrong?    Can't you get along with Doc?''[1]    Vermette replied, ''No.    He wants me to pay him . . . fifteen hundred dollars; and I won't.''    After stating that Stasiun was a ''reasonable guy,'' Rymszewicz said, ''Why don't you give me five hundred dollars for him, and I'll see that you get your lease.''

The lease was approved on June 25, 1959, but the vote of the individual Councillors on the matter does not appear.

One evening, early in July, Stasiun went to see Vermette. In the course of their conversation Stasiun asked Vermette for $500.    Vermette refused, saying ''Why do I have to pay?    The lease has already been approved.''    Stasiun replied, ''Well, . . . you've already cost me four hundred dollars.''    He then explained that he had to pay $100 to four other Councillors to vote for or against the lease, as he might decide.    This conversation, which was heated and loud, was overheard by Vermette's wife, who was in another part of the house.

## The Solicitation Indictment.

The solicitation indictment charges the defendants with violating G. L. (Ter. Ed.) c. 268, § 8.    This section makes it an offence for an executive officer to corruptly request or accept ''a gift or gratuity or a promise to make a gift or to do an act beneficial to him, under an agreement or with an understanding that his vote, opinion or judgment shall be given in any particular manner, or upon a particular side of any question, cause or proceeding, which is or may be by law brought before him in his official capacity.''[2]    The indictment charges that the defendants' solicitations occurred ''at various times between January 31, 1959, and July 31, 1959, the exact dates being . . . unknown.''    While the statute speaks only of a ''legislative, executive, judicial, county or municipal officer,'' *Commonwealth* v. *Mannos,* 311

---

[1] Stasiun was a doctor of optometry and was often referred to as ''Doc.''

[2] Section 8 was repealed by St. 1962, c. 779, § 3.    The general subject matter is now covered by G. L. c. 268A, §§ 1 et seq., inserted by St. 1962, c. 779, § 1.

Mass. 94, 107–111, held that a private citizen could be found guilty under a joint indictment charging him and a municipal officer with the offence of requesting and accepting bribes. Likewise, Manning and Rymszewicz, both private citizens, could be found guilty under a joint indictment charging them and Stasiun, an executive officer, with solicitation.

The defendants contend that the indictment does not charge a crime known to the law for the reason that it charges solicitation as a continuing offence. This objection was expressly raised by the defendants' motions to quash. *Commonwealth* v. *Fuller,* 163 Mass. 499. *Commonwealth* v. *Andler,* 247 Mass. 580, 581.

The indictment does not allege a continuing offence in the sense recognized in *Wells* v. *Commonwealth,* 12 Gray, 326 (keeping a house of ill fame), *Commonwealth* v. *Peretz,* 212 Mass. 253, 254 (deriving support from earnings of a prostitute), and *Commonwealth* v. *Runge,* 231 Mass. 598, 600 (practising medicine unlawfully). In such cases, if a continuing crime is charged, it is the general practice, throughout the period of time alleged, that constitutes the offence. Here the single offence is not a continuing general practice of soliciting bribes, but rather the solicitation of a bribe from Vermette for the favorable vote of an executive officer on one specific matter before him. The request for the gratuity, being unproductive when first made, was repeated. But whether the request was repeated in one meeting, or in several meetings on a single day, or in meetings separated by days or weeks rather than minutes, each separate request was an integral part of the wrongful criminal solicitation, from one person, of one payment for one favor. Compare *Commonwealth* v. *Fuller,* 163 Mass. 499, which invalidated an indictment charging adultery at divers times between stated dates, because adultery is not a continuing offence and because several charges of separate offences may not be included in one count. That case cannot be considered as authority for the proposition that the crime of requesting a single bribe may not have a continuing aspect.

It has been held elsewhere that where it appears that successive takings are actuated by a single, continuing criminal impulse or intent or are pursuant to the execution of a general larcenous scheme, such successive takings constitute a single larceny, regardless of the extent of the time which may have elapsed between each taking. *People* v. *Bailey,* 55 Cal. 2d 514. *People* v. *Cox,* 286 N. Y. 137, 141. *West* v. *Commonwealth,* 125 Va. 747. *Regina* v. *Bleasdale,* 2 C. & K. 765. *Regina* v. *Shepherd,* 11 Cox C. C. 119. *Regina* v. *Firth,* 11 Cox C. C. 234. See annotation in 136 A. L. R. 950. Anderson, Wharton's Criminal Law & Procedure, § 450, and cases cited in note 7.

The test of single intent or general scheme is just as appropriate for the crime of soliciting bribes as it is for larceny. Solicitation of a bribe may take the form of protracted negotiations. An offer to give or accept a bribe, while it is outstanding, has a continuing effect. See *Commonwealth* v. *Lee,* 149 Mass. 179, 184, in which larceny by false pretences was continuous where goods were obtained on different occasions, but under the same continuing misrepresentation. Moreover, the fact that all the solicitations related to the approval of the registry of motor vehicles lease with Vermette supports the conclusion that there was one overall scheme.

The statute (§ 8) defines the crime that the indictment charges: "A[n] . . . executive . . . officer who corruptly requests . . . [a bribe for his] vote . . . upon a particular side of any question . . . before him" shall be punished. It is inconsequential that separate solicitations could, as is well established, be charged as separate offences. *Commonwealth* v. *Mannos,* 311 Mass. 94, 113. *Commonwealth* v. *Beal,* 314 Mass. 210, 227. The motions to quash were properly denied.

All the defendants filed motions for directed verdicts. They were properly denied. There was ample evidence that Manning in late January, Stasiun in late February, and Rymszewicz in late May or early June had directly solicited a bribe from Vermette. It was not necessary to prove that Stasiun was present when Manning and Rym-

szewicz solicited Vermette. In *Commonwealth* v. *Mannos,* 311 Mass. 94, 110, we held that a private citizen could be convicted of requesting and accepting bribes if the proof established that he had "participated in every essential step" of the felonious conduct. Here, the crime alleged is solicitation. Manning and Rymszewicz committed that offence as soon as each requested a bribe.

In the *Mannos* case, the defendant's conviction as to some of the counts was reversed because he was not present when payments were made and he had not assented to them. On those counts, it was the opinion of the court that he had not participated to a degree sufficient to convict him as a principal for requesting and accepting bribes; the proof established only that he was an accessory before the fact. Thus, the *Mannos* case does not stand for the proposition that a public officer must be present at a solicitation before a private citizen can be found guilty of that offence.

Manning also contends that under *Commonwealth* v. *Runge,* 231 Mass. 598, 600, the evidence of solicitation on January 27, 1959, was inadmissible against him. We disagree. This, as stated, was not a charge of being in the business of soliciting bribes from Vermette throughout the period from January 31, 1959, to July 31, 1959. The basis of the rule that time is of the essence under indictments charging a continuing offence of the kind described in the *Runge* case is that part of the description of the offence charged is the duration of time during which it is charged the acts took place. So, in *Commonwealth* v. *Robinson,* 126 Mass. 259, as stated in the *Runge* case (231 Mass. at 600), "the defendant was complained of for keeping a liquor nuisance between January 1 and August 20. He pleaded in bar that he had been acquitted on a complaint charging him with having kept the same illegal liquor nuisance from January 1 to May 28. It was held that the acquittal was a bar. The decision was made on the ground that a continuing offence for a period named is one indivisible offence, and since the defendant in the case then before the court had theretofore been acquitted of the offence for a portion of the time in question on the later charge he had been ac-

quitted of the offence later charged. It follows from this that the duration of time specified in case of a continuing offence is a part of the description of the offence charged. It is for this reason that evidence of acts committed outside the time specified are not admissible in evidence."

No such consideration is present here. The essential charge is that the three defendants on divers occasions solicited a bribe for Stasiun's favorable vote on the registry lease. Any defendant tried on that charge could not again be tried for that offence. Manning having been charged as a principal in the single wrong, his conviction without error, or his acquittal, as the case may be, will end the matter in all its aspects as to him. Precise time was not essential (G. L. [Ter. Ed.] c. 277, § 20) and the evidence of the January 27, 1959, solicitation was admissible against Manning.

We turn now to assignments relating to the charge. The judge in effect instructed the jury that if they found that Manning, Stasiun and Rymszewicz had entered into a conspiracy to solicit a bribe, then, by virtue of their agreement, all could be found guilty of the substantive offence of solicitation on proof that only one committed that offence and without proof that the others participated in any way in the solicitation.

The rule in this jurisdiction is to the contrary. To be liable for the substantive offence, a coconspirator must participate or aid in the commission of it. See *Commonwealth* v. *Knapp,* 9 Pick. 495, 518; *Commonwealth* v. *Lucas,* 2 Allen, 170; *Commonwealth* v. *Clune,* 162 Mass. 206, 214; *Commonwealth* v. *Lavery,* 255 Mass. 327, 333. Long ago this court cautioned that the proof of conspiracy, without more, did not justify a finding that a conspirator had committed the offence which was the object of the conspiracy. In *Commonwealth* v. *Knapp,* 9 Pick. 495, 518–519, it was said by Putnam, J., "We do not however assent to the position which has been taken by the counsel for the government, that if it should be proved that the prisoner conspired with others to procure the murder to be committed, it follows as a legal presumption, that the prisoner aided in the actual perpetration of the crime unless he can show the contrary

to the jury. The fact of the conspiracy being proved
against the prisoner is to be weighed as evidence in the
case having a tendency to prove that the prisoner aided,
but it is not *in itself* to be taken as a legal presumption of
his having aided unless disproved by him."

If the rule were otherwise, the fundamental distinction
between a substantive offence and a conspiracy to commit
that offence would be ignored. Each is a separate and
distinct offence and each may be separately punished.
*Fox* v. *Commonwealth,* 264 Mass. 51, 53. *Commonwealth*
v. *Stuart,* 207 Mass. 563, 571. See *Clune* v. *United States,*
159 U. S. 590. "The combination for the illegal purpose or
for the use of illegal means is the essence of conspiracy."
*Attorney Gen.* v. *Tufts,* 239 Mass. 458, 493. Punishment is
imposed for entering into the combination. This is not the
same thing as participating in the substantive offence which
was the object of the conspiracy. While it has been said
that a conspiracy is a "partnership in crime" (*United
States* v. *Socony-Vacuum Oil Co. Inc.* 310 U. S. 150, 253),
that metaphor should not be pressed too far. It does not
follow that such a partnership is governed by the same
principles of vicarious liability as would apply in civil cases.
Our criminal law is founded on the principle that guilt, for
the more serious offences, is personal, not vicarious. One
is punished for his own blameworthy conduct, not that of
others. Perkins on Criminal Law, 550. Sayre, Criminal
Responsibility for the Acts of Another, 43 Harv. L. Rev.
689. Compare *Gurney* v. *Tenney,* 197 Mass. 457, 466 (civil
liability of a conspirator for the misrepresentation of an-
other). To ignore the distinction between the crime of
conspiracy and the substantive offence would enable "the
government through the use of the conspiracy dragnet to
convict a conspirator of every substantive offense com-
mitted by any other member of the group even though he
had no part in it or even knowledge of it." *United States*
v. *Sall,* 116 F. 2d 745, 748 (3d Cir.).³

---

³ The decision in the *Sall* case is in accordance with our rule; it was re-
jected, however, by a divided court in *Pinkerton* v. *United States,* 328 U. S.
640.

In some of our decisions, language may be found to the effect that where parties are working with a common purpose to commit an offence the act of one is the act of all. *Commonwealth* v. *Harley,* 7 Met. 462, 465. *Commonwealth* v. *Mulrey,* 170 Mass. 103, 110. *Commonwealth* v. *Morrison,* 252 Mass. 116, 123. *Commonwealth* v. *Lane,* 254 Mass. 46, 49. *Commonwealth* v. *Jacobson,* 260 Mass. 311, 326. *Commonwealth* v. *Mycock,* 315 Mass. 262, 267–268. To a certain extent this is true. It clearly is so when the charge is conspiracy. But an analysis of the cases just cited reveals only that where two or more are jointly engaged in the commission of a crime each is criminally liable and the act of one is the act of all. In each case the defendant who was found guilty of the substantive offence had participated to some extent in the commission of that offence. Thus, those cases cannot be considered as authority for the proposition that by merely entering into a conspiracy a defendant thereby incurs criminal liability for the substantive offence committed by his coconspirator. On the contrary, as we said in *Commonwealth* v. *Bloomberg,* 302 Mass. 349, 356, "It . . . cannot be held that a conspirator is as matter of law an aider or abettor in the perpetration of the crimes whose commission he has agreed with others to accomplish."

We are mindful that a different rule now prevails in the Federal courts as a result of the decision in *Pinkerton* v. *United States,* 328 U. S. 640, although prior to that decision the views of the lower Federal courts were conflicting. See *United States* v. *Sall,* 116 F. 2d 745 (3d Cir.), and compare *Johnson* v. *United States,* 62 F. 2d 32 (9th Cir.). With deference, we are not persuaded to follow the *Pinkerton* case.[4] The reasoning of Rutledge, J., in his dissenting opinion (concurred in by Frankfurter, J.), seems to us more convincing. It follows that the instruction of the trial judge was error.

---

[4] The *Pinkerton* decision has been criticized in 56 Yale L. J. 371, and 16 Fordham L. Rev. 275.

### THE CONSPIRACY INDICTMENT.

All the defendants assign as error the denial of their motions for directed verdicts on the conspiracy indictment which charged a continuing offence between January 31, 1959, and July 31, 1959. Before deciding whether their motions should have been granted, certain questions relating to the admissibility of evidence must first be resolved. It is contended that evidence of the episode at the hotel in Boston was incompetent to establish a case against the defendants on the conspiracy indictment. "The date when a conspiracy is alleged to have begun is not, in effect, a wall behind which the court and jury may never look for the purpose of discovering facts that have a bearing upon the fact of the conspiracy itself. The Commonwealth had a right to show the whole history of the conspiracy from its commencement to its consummation." *Commonwealth v. Beal,* 314 Mass. 210, 227. *Commonwealth v. Stuart,* 207 Mass. 563, 569. *Commonwealth v. Cheng,* 310 Mass. 293, 295. Since a conspirator is held to adopt the acts of his coconspirators which occurred prior to his entry into the conspiracy (*Commonwealth v. Rogers,* 181 Mass. 184, 193–194), evidence of events at the hotel in Boston were properly admissible against Rymszewicz, who, according to the evidence, joined it at a later date.

Under a conspiracy indictment, the acts and declarations of one conspirator in pursuance of the common object are admissible against the other conspirators. *Commonwealth v. Stuart,* 207 Mass. 563, 567. *Attorney Gen. v. Pelletier,* 240 Mass. 264, 313. *Commonwealth v. McDermott,* 255 Mass. 575, 581. But before the acts and declarations of one are admissible against the others, the judge must make a preliminary finding upon evidence aliunde that a conspiracy exists. *Commonwealth v. Waterman,* 122 Mass. 43, 59. *Commonwealth v. Smith,* 163 Mass. 411, 418. *Commonwealth v. Rogers,* 181 Mass. 184, 193. In making this determination, the conspiracy may be, and usually is, proved by circumstantial evidence. *Commonwealth v. Smith,* 163 Mass. 411, 417–418. *Commonwealth v. Benesch,* 290 Mass.

125, 131.  Every piece of evidence by itself does not have
to be sufficient to prove the main point at issue.  *Attorney
Gen.* v. *Pelletier,* 240 Mass. 264, 314.  "Evidence which
would be colorless if it stood alone may get a new com-
plexion from other facts which are proved, and in turn may
corroborate the conclusion which would be drawn from the
other facts."  *Commonwealth* v. *Mulrey,* 170 Mass. 103,
110.  *Commonwealth* v. *Coyne,* 228 Mass. 269, 272.

There was sufficient evidence apart from the acts and
declarations of Stasiun and Rymszewicz to establish a prima
facie case of conspiracy against Manning.  From the evi-
dence of the episode at the hotel in Boston, it could be in-
ferred that Manning had conspired with Stasiun to solicit a
bribe from Vermette.  The same evidence which would war-
rant the judge finding as a preliminary matter that Man-
ning was a member of the conspiracy would also warrant
the jury in so finding.  The motion for a directed verdict
by Manning was properly denied.

There was also sufficient evidence aliunde to warrant a
preliminary finding that Stasiun was a member of the con-
spiracy.  As with Manning, the incident at the hotel justi-
fied the inference that Stasiun had agreed with Manning
to solicit a bribe from Vermette.  Thus, the jury could
have found from the conduct of Manning and Stasiun that
Stasiun was a member of the conspiracy.  Stasiun's motion
for a directed verdict was likewise properly denied.

Similarly, there was a prima facie case against Rym-
szewicz who by his own acts and declarations was an agent
of Stasiun in soliciting.  This coupled with the fact that
they had been in contact with each other on numerous occa-
sions was sufficient to take the case against him to the jury.

The defendants have also assigned as error a portion of
the judge's charge.  Manning and Stasiun take the posi-
tion that testimony relating to solicitations made by Rym-
szewicz could, in accordance with the judge's charge, be
considered as evidence against them by the jury.  Initially
the evidence of each defendant's acts and declarations was
admitted with the limitation that such evidence be weighed

by the jury only against that particular defendant. After the trial had progressed to a considerable extent, this limitation was removed. The judge in his charge commented on the removal as follows: "[O]nce all of the testimony is in, we can then determine whether or not there are certain phases of that testimony which, at the time it was introduced, only seemed to implicate one; but in view of all that we have heard, we now find that it may implicate others, if you find that there are other facts to which they can be related, and taking them altogether it helps you to draw an inference of implication."

The acts and declarations to which the trial judge made reference included: Stasiun's conversation with Vermette on January 19, 1959; Manning's and Stasiun's conversation with Vermette at the hotel; Stasiun's conversation with Vermette in late February; Rymszewicz's conversation with Vermette in the late spring; and Stasiun's conduct at a meeting of the Governor's Council.

The action of the judge in removing the limitations as to this evidence was correct if his preliminary finding was proper. By his own acts and declarations Rymszewicz was sufficiently linked to a conspiracy with Stasiun and Manning. Thus, as to him, there was no error. Manning and Stasiun's contentions, however, must be sustained. Apart from the conduct and statements of Rymszewicz relating to his solicitations, the only evidence linking him with Manning and Stasiun concern his association with Stasiun. They were first cousins who had known each other all their lives. Rymszewicz was a worker in Stasiun's 1958 political campaign. During the campaign he had been in the company of Stasiun on several occasions. Rymszewicz attended Stasiun's 1959 inauguration and the subsequent reception. While serving on a committee in charge of a testimonial dinner for Stasiun, his duties consisted of raising and collecting money. Since Stasiun's election in 1958, Rymszewicz had visited his office alone several times. Rymszewicz and his wife, who also worked on the Stasiun campaign, visited Stasiun's home on two or three occasions

when large cookouts were held.   Stasiun was instrumental
in procuring the appointment of Rymszewicz to the Board
of Trustees of the New Bedford Institute of Technology,
a nonsalaried position.   This appointment was confirmed
by the Executive Council.   This was not evidence aliunde
from which an inference could be drawn that Rymszewicz
conspired with Manning and Stasiun to solicit bribes from
Vermette.   The admission of the acts and declarations of
Rymszewicz against Stasiun and Manning, therefore, was
error, and it cannot be said to be harmless; it indicated
that Rymszewicz had solicited a bribe from Vermette on
behalf of Stasiun.

## MISCELLANEOUS MATTERS.

Manning contends that he was improperly indicted and
tried in Bristol County.   He relies on the Commonwealth's
failure to present any evidence of overt criminal acts com-
mitted by him in that county.   Prior to the trial the Attor-
ney General had petitioned the court for leave to proceed
against Manning pursuant to G. L. (Ter. Ed.) c. 277, § 57A,
alleging that he was in doubt as to whether that part of
both indictments which pertains to Manning set forth a
crime which was committed within the territorial jurisdic-
tion of the court.   Manning filed motions to dismiss under
both indictments and a plea in abatement under the solici-
tation indictment.   The motions to dismiss and the plea in
abatement were denied.   The court allowed the Common-
wealth's motion on the ground that "alleged actions of . . .
Manning in Boston were all part of the same alleged scheme
for the solicitation of a bribe from Vermette by the defend-
ant Stasiun, the essential locus of which scheme is in Bris-
tol County."   There was no error.

Section 57A provides that a defendant shall not be dis-
charged for lack of jurisdiction where the evidence estab-
lishes the situs of the crime without the county, if the Com-
monwealth has previously petitioned for leave to proceed
stating that doubt exists as to whether the crime was com-
mitted within the county, and leave is granted by the court

after hearing. In *Commonwealth* v. *Mannos,* 311 Mass. 94, 102–104, under an indictment for requesting and accepting bribes, the district attorney stated that there was no evidence that one of the defendants had received bribes within the county in which the trial was held, and that the evidence would establish only the receipt of bribes in another county. In upholding the granting of leave to proceed under § 57A, the court found it significant that there was activity in both counties pursuant to one plan. The existence of a single scheme in the case at bar with varying degrees of participation by each of the defendants was sufficient to cast doubt as to whether Manning had committed a crime in Bristol County. The court, thus, was justified in granting leave to proceed.

Even apart from § 57A, venue was properly laid under the conspiracy indictment. It is clear that a conspiracy prosecution may be instituted in any county in which an overt act is committed by any one of the conspirators in execution of the plan. This is true notwithstanding the fact that the defendant might never have been within the county during the continuance of the conspiracy. *Commonwealth* v. *Saul,* 260 Mass. 97. *Commonwealth* v. *O'Rourke,* 311 Mass. 213, 221. Since there was evidence that Stasiun and Rymszewicz had made solicitations in Bristol County, venue was properly laid there.

### CONCLUSION.

All of the assignments of error have been considered. Those not discussed are either without merit or present questions not likely to arise at a new trial.

The verdicts on the solicitation indictment are set aside and the judgments on this indictment are reversed. The verdicts on the conspiracy indictment must be set aside as to Stasiun and Manning and the judgments as to them are reversed. Since it would be anomalous in these circumstances to affirm Rymszewicz's conviction we are of opinion that justice requires that the verdict and judgment against him on the conspiracy indictment should also be set aside.

*So ordered.*

KIRK, J. (dissenting) I agree with the majority that the judgments against all of the defendants on both indictments should be set aside.

The Commonwealth's case has, however, several grave infirmities which, I submit, merit more detailed discussion than has been given to them by the majority. I propose to discuss them at length, and do so in the hope that I may be able to make clear the reasons for my firm belief that the substantive indictment, charging the crime of requesting bribes, is invalid, and that any conviction obtained under it should not be permitted to stand.

In this dissent, I shall purposely avoid the use of the words "solicit" or "solicitation." I think the majority should do the same. Neither word appears in the statute which defines the crime (G. L. c. 268, § 8) or in the indictment. Since both words connote, to some extent, the idea of practice, or canvassing, or repeated requests (see Webster's New International Dictionary Second Edition; Webster's Third New International Dictionary) the use of them tends to becloud the issue and to beg the question before the court.[1]

1. I shall first discuss the holding of the majority that "The motions to quash [the substantive indictment] were properly denied." The defendants contend that the substantive indictment is invalid because it charges a crime unknown to the law. In the light of long established and unbroken precedent, founded on fairness and reason, this contention appears to me to be incontrovertible. No one denies that the indictment, the body of which is set out in the footnote,[2] charges, in terms, a continuing offence. It

---

[1] The words do appear in some of our decisions, but in these decisions there was no charge, as here, of a continuing offence. See, e.g., *Commonwealth* v. *Mannos*, 311 Mass. 94. Also, the indictment does not allege, and the Commonwealth makes no contention that it can be construed as alleging, that Manning or Rymszewicz incited, advised or solicited Vermette to commit a felony by offering a bribe to Stasiun in violation of G. L. c. 268, § 7. As to this see *Commonwealth* v. *Flagg*, 135 Mass. 545, 549, and *Commonwealth* v. *Kaplan*, 238 Mass. 250, 255.

[2] "The jurors for the said Commonwealth on their oath present, That Ernest C. Stasiun, then an executive officer of the Commonwealth, to wit: a member of the executive council of the said Commonwealth, Michael J. Man-

so charges in the sense dealt with in *Commonwealth* v. *Fuller*, 163 Mass. 499, where, as here, (1) a single act constituted the offence defined in the statute and where, as here, (2) repetitions of the same act within a stated period of time were alleged in the indictment to constitute a continuing offence. It therefore seems quite beside the point for the majority to cite and distinguish cases where the continuing offence, as such, was expressly established by statute.[3] There is, of course, no statute in our Commonwealth which defines a request for a bribe, or a series of requests for a bribe, as a continuing offence. Further, the majority do not cite and, I venture to say with confidence, are unable to cite a single case in this Commonwealth or elsewhere, holding that a request, or a series of requests, for a bribe is a continuing offence. This is a significant fact, particularly with respect to a crime which has been frequently before the courts. It means to me not merely that no appellate court anywhere has ever recognized the proposition which the majority now establish, but it also implies that no trial court has ever favorably entertained the proposition and, indeed, that no prosecutor, except for the present case, has ever ventured to offer the proposition for consideration.

The reason for the total lack of precedent, it seems to me, is plain. It is found in our own decisions. Any *one* of the several acts set out in the bribery statute is a violation of the statute and constitutes a crime. *Commonwealth* v. *Albert*, 310 Mass. 811, 818, 820. *Commonwealth* v. *Mannos*,

---

ning and Richard B. Rymszewicz at various times between January 31, 1959, and July 31, 1959, the exact dates being to the said jurors unknown, at New Bedford, in the County of Bristol, and as part of the same transaction, at divers other places, did corruptly request gifts and gratuities and promises to make a gift from Paul R. Vermette under an agreement and with an understanding that the vote, opinion and judgment of the said Ernest C. Stasiun would be given in a particular manner and on a particular side of a question, cause or proceeding which was or might by law be brought before him in his official capacity, and as a consideration for work and service in connection therewith."

[3] *Wells* v. *Commonwealth*, 12 Gray, 326. *Commonwealth* v. *Peretz*, 212 Mass. 253, 254. *Commonwealth* v. *Runge*, 231 Mass. 598, 600, cited by the majority.

311 Mass. 94, 113.  *Commonwealth* v. *Bracy,* 313 Mass. 121, 123.  *Commonwealth* v. *Beal,* 314 Mass. 210, 224.  See *Commonwealth* v. *Murray,* 135 Mass. 530, 532.  A request for a bribe is one of the several acts set out in the indictment. G. L. c. 268, § 8.  The crime is complete when the request is made.  *Commonwealth* v. *Albert,* 310 Mass. 811, 818. It is thereupon punishable.  Nothing further needs to be proved.  If there is more than one request for a bribe each additional request is a separate and distinct crime, which must be the subject of a separate indictment or which may be the subject of a separate count in one indictment under G. L. c. 277, § 46.  That this is, and always has been, the law in this Commonwealth seems crystal clear in the opinion of Chief Justice W. A. Field in *Commonwealth* v. *Fuller,* 163 Mass. 499, referred to in the majority opinion. In the *Fuller* case, as here, there was an indictment in one count.  The indictment there charged that the defendant at divers times and days between two specified dates committed a succession of similar offences, specifically adultery, with one named woman.  The court quashed the indictment because it did ''not set forth any offence known to the law in any legal or sufficient manner'' and because it was ''bad for duplicity in charging more than one offence in the same count.''  The court said further, ''Adultery is not a continuing offence.  Each act of adultery constitutes a separate offence.''

The *Fuller* case did not, I submit, introduce any new principle into our law, but rather was declaratory of what always had been the law in this Commonwealth.  The court simply applied the existing law, and quashed an indictment which was plainly not in conformity with it.  *Commonwealth* v. *Adams,* 1 Gray, 481, 483.

I am unable to distinguish, in principle, law or logic, the indictment in the case before us from the indictment which was condemned in the *Fuller* case.  I find it difficult to understand how a crime which has been completed (the crime of requesting a bribe is complete when the request is made, *Commonwealth* v. *Albert,* 310 Mass. 811, 818) can be said to

continue.   So far as I am aware, the rule of the *Fuller* case,
requiring a separate indictment or count for each offence,
has been uniformly followed in practice in all criminal
cases, including bribery cases, in this Commonwealth.   As
to bribery cases, see *Commonwealth* v. *Connolly*, 308 Mass.
481, 483, *Commonwealth* v. *Galvin*, 310 Mass. 733, 735, *Com-
monwealth* v. *Hayes*, 311 Mass. 21, 22, *Commonwealth* v.
*Barker*, 311 Mass. 83, 84, *Commonwealth* v. *Mannos*, 311
Mass. 94, 95–96.   As to larceny cases, for example, see,
notably, *Commonwealth* v. *Greenberg*, 339 Mass. 557, 561–
562 (twenty-two indictments, embracing a total of two hun-
dred sixty-nine counts); *Commonwealth* v. *Ries*, 337 Mass.
565, 567–568 (fourteen indictments); *Commonwealth* v. *Ian-
nello*, 344 Mass. 723, 724 (fifteen indictments).   The appli-
cability of the *Fuller* case to criminal cases like the one be-
fore us was implicitly confirmed in *Dolan* v. *Commonwealth*,
304 Mass. 325, 340.

The majority, in upholding the indictment which charges
a continuing offence in requesting a bribe, rely upon the
analogy of larceny by false pretence.   I respectfully sug-
gest that the analogy fails.   As earlier stated in this dis-
sent, the crime of requesting a bribe, here charged, is com-
mitted and complete when the request is made.   In larceny
by false pretence, however, the false pretence is but one in-
gredient of the crime.   The crime of larceny by false pre-
tence is not committed unless and until the owner parts
with goods or money in reliance upon the false pretence.
Thus it is often, and quite correctly, said in such cases that
the false pretence continues to be operative so long as the
victim, in reliance upon it, parts with the goods or money.
This, I submit, is the proper and limited use of the term
"continuing offence"[4] in *Commonwealth* v. *Lee*, 149 Mass.
179, 184, and in *People* v. *Bailey*, 55 Cal. 2d 514, both cited

[4] The term "continuing offence" is, of course, also used in larceny and
kidnapping cases in reference to the carrying away or asportation of the
goods or person as being a renewal or continuation of the original trespass
for the purpose of conferring venue or jurisdiction in the county or State into
which the goods or person has been taken.  *Commonwealth* v. *Macloon*, 101
Mass. 1, 5.  *Commonwealth* v. *White*, 123 Mass. 431, 433.  *Commonwealth* v.
*Parker*, 165 Mass. 526, 539.

by the majority. A request for a bribe which in itself is a complete crime cannot, in my judgment, be equated with a false pretence which is only an element of the crime of larceny by false pretence.

The majority seem to rely upon five larceny cases from foreign jurisdictions to sustain their holding. In the first place, we are not here dealing with larceny. In the second place, despite the fact that there has been a myriad of larceny cases considered and reported by this court since 1804, not one of them provides a basis for the extremely tenuous analogy which the majority feel able to draw from the foreign cases. On the contrary, the larceny cases cited above in this dissent, of which *Commonwealth* v. *Greenberg,* 339 Mass. 557, is the most striking example, refute the proposition which the majority establish.

The generalizations which are interspersed among the citations in that part of the majority opinion which upholds the indictment seem to me to have no relevance whatever to the crimes defined in G. L. c. 268, § 8. For example, the opinion states, "Solicitation of a bribe may take the form of protracted negotiations. An offer to give or accept a bribe, while it is outstanding, has a continuing effect." The statute (G. L. c. 268, § 8) is not concerned with these matters. It does not tolerate negotiations or outstanding offers. It unequivocally denounces each and every request for a bribe by a public official as a crime, and declares each and every such request punishable.

The opinion, on the point now under consideration, concludes with the words, *"It is inconsequential* that separate . . . [requests] could, as is well established, be charged as separate offences" (emphasis supplied). As earlier noted, there is no support whatever in our decisions or in our statutes for this assertion. On the contrary, it is completely irreconcilable with *Commonwealth* v. *Fuller,* 163 Mass. 499, which *requires* a separate charge for each act which constitutes an offence. This bald assertion by the majority, although stated with finality, leaves to the profession a legacy of unanswered and troublesome questions.

It should not go unchallenged. For example, one is left to wonder if *Commonwealth* v. *Fuller* is still the law of the Commonwealth, and, if it is not, what the law now is. One is left to wonder if the Commonwealth's prosecutors are now free to put persons to trial for offences hitherto unknown to the law, based on indictments heretofore expressly condemned, and to leave it to this court, on an ad hoc basis, to determine, after conviction, whether the proceedings were properly brought. One is left to wonder what has become of "the rule requiring certainty in criminal pleading" in the Commonwealth. Lummus, J., in *Commonwealth* v. *Dowe,* 315 Mass. 217, 220, and cases cited. One thing at least is clear. By upholding the substantive indictment the court this day sua sponte has created a new crime. "No precedent and no authority has been shown for such a prosecution, and no such prosecution has been attempted within the knowledge of the Court, although a similar law has been in force almost from the foundation of the government . . . . That such a prosecution is unprecedented, shows very strongly what has been understood to be the law upon this subject." Shaw, C.J., *Commonwealth* v. *Willard,* 22 Pick. 476, 477–478.

2. The infirmities in the Commonwealth's case are further aggravated and compounded by other factors. Among these factors are: (1) the allegation in the indictment that each of the three defendants is a principal in the commission of the alleged continuing offence of requesting bribes; (2) the fact that only Stasiun is capable of committing the crime as defined in the statute, G. L. c. 268, § 8; (3) the fact that, in the absence of certain evidence, later to be considered (see point 3, post), only Stasiun, of the three defendants, can be convicted as a principal in the commission of the defined offence; (4) the fact that the substantive indictment charging a continuing offence was tried with the conspiracy indictment, which, by definition, is also a continuing offence.

Consideration of these factors will, I believe, (a) demonstrate that on the evidence neither Manning nor Rymszewicz

Commonwealth *v.* Stasiun.

can be convicted as a principal and they therefore are entitled to judgments in their favor; (b) show that the substantive crime has not been proved as charged; (c) show that the opinion is self-contradictory, and (d) disclose additional reasons why the substantive indictment should be quashed.

The body of the conspiracy indictment is set out in the footnote.[5] This should be read and compared with the substantive indictment set out in a previous footnote to this dissent.[6] It will be noted that both indictments charge a continuing offence, and that both are, in every material respect, the same. The only differences are that the conspiracy indictment has the words "did conspire together," whereas the substantive indictment does not; and that the substantive indictment has the words "and as part of the same transaction," whereas the conspiracy indictment does not.[7]

This stratagem of pleading, whether artful or artless, whereby the two indictments coincide in all material respects, enabled the prosecution to apply evidence, which was admissible only on the conspiracy indictment, to the substantive indictment with the result that convictions were obtained which are, as I shall later try to show, utterly unsupportable under G. L. c. 268, § 8, which alone defines the substantive offence.

Meanwhile the majority reaffirm the accepted rule that

---

[5] "The jurors for the said Commonwealth on their oath present, That Ernest C. Stasiun, Michael J. Manning, and Richard B. Rymszewicz did conspire together at New Bedford, in the County of Bristol, and divers other places at divers times between January 31, 1959, and July 31, 1959, the exact times being to the said jurors unknown, to corruptly request and to corruptly accept gifts and gratuities and promises to make a gift from Paul R. Vermette under an agreement and with an understanding that the vote, opinion and judgment of the said Ernest C. Stasiun, then an executive officer of the Commonwealth of Massachusetts, to wit a member of the Executive Council, would be given in a particular manner and upon a particular side of a question, cause or proceeding which was or might by law be brought before him in his official capacity."

[6] See footnote 2.

[7] The conspiracy indictment also has the words "and to corruptly accept," which do not appear in the substantive indictment. That difference is not here relevant.

"the fundamental distinction between a substantive offence and a conspiracy to commit that offence" should not be ignored, and that each "is a separate and distinct offence and each may be separately punished." Among other distinctions recognized in this Commonwealth is that a conspiracy to commit a crime is a misdemeanor, *Commonwealth* v. *Pelletier,* 264 Mass. 221, 227, *Commonwealth* v. *McKnight,* 289 Mass. 530, 537, and that all who participate in it are principals. *Commonwealth* v. *Drew,* 3 Cush. 279, 284.

In emphasizing the importance of the fundamental distinction between conspiracy and the substantive offence, the majority refer to certain elementary principles which must be observed, in order to avoid injustice, when a conspiracy indictment is tried with one or more substantive indictments. With the statement of principles I am in emphatic accord: "Our criminal law is founded on the principle that guilt, for the more serious offences, is personal, not vicarious. One is punished for his own blameworthy conduct, not that of others. . . . To ignore the distinction between the crime of conspiracy and the substantive offence would enable 'the government through *the use of the conspiracy dragnet to convict a conspirator of every substantive offense committed by any other member of the group even though he had no part in it or even knowledge of it' "* (emphasis supplied). I respectfully suggest that the majority have failed to apply here the salutary rule which they state. I further suggest that the application of the salutary rule to the case before us would require, on the evidence, that judgments on the substantive indictment be entered in favor of Manning and Rymszewicz. With the rule in mind let us examine the evidence as to each of the three defendants.

(a) The evidence recounted in the opinion shows that Manning made but one request of Vermette, on January 27, 1959. There is not a shred of evidence that Rymszewicz ever knew of this request. (b) The opinion states that four or five months later (in late May or early June) Rymszewicz made a single request of Vermette. There is not a scintilla of evidence that Manning ever knew of this re-

quest. (c) The opinion states that Stasiun himself made one direct request of Vermette in February, 1959. There is no evidence whatever that either Manning or Rymszewicz ever knew of this request. (d) The opinion states that Stasiun also made a direct request of Vermette in July, 1959, when the approval of the lease was no longer pending before the Council. There is no suggestion whatever that Manning or Rymszewicz knew of this request.

It is, of course, readily inferable that Stasiun knew of all of the requests, but surely, on any reasonable application of the rule of fundamental fairness stated by the majority, with which I completely agree, Stasiun's knowledge of Manning's request in January cannot be imputed to Rymszewicz, nor can Stasiun's knowledge of Rymszewicz's request in May or June be imputed to Manning. Nor can Stasiun's own requests, on the evidence before us, be imputed to either Manning or Rymszewicz. In the light most favorable to the Commonwealth the evidence shows no continuing offence, but rather, a succession of distinct acts by Stasiun. The first was by Stasiun using Manning as his agent. The second was by Stasiun acting for himself. The third was by Stasiun using Rymszewicz as his agent. The fourth was by Stasiun alone.[8]

As to the substantive crime, one is not chargeable as a principal, under the law or elementary principles of fairness, with the acts done by others in which he took no part and of which he had no knowledge. See *Commonwealth* v. *Greenberg,* 339 Mass. 557, 575–577; *Commonwealth* v. *Kiernan,* 348 Mass. 29, 49–50. Thus, even if one assumes, arguendo, that the indictment charging a continuing offence is valid, the charge of a continuing offence has not been proved. In similar situations, applying the familiar rule that "[t]he offence must not only be proved as charged, but it must be charged as proved," this court has set aside the convictions. *Commonwealth* v. *Albert,* 307 Mass. 239, 244, and

---

[8] This request was in July, 1959, and was not per se an offence within the statute because at the time of the request the lease, having already been approved, was no longer pending before the Executive Council.

cases cited. That result should follow here. The most that the evidence shows is a single request by Manning and a single request by Rymszewicz. Even in cases where there is a statute which defines an offence as a continuing one, guilt cannot be based upon evidence of a single act. *Patnoude* v. *New York, N. H. & H. R.R.* 180 Mass. 119, 120. *Commonwealth* v. *Hayes,* 150 Mass. 506, 507–508. *Commonwealth* v. *Slavski,* 245 Mass. 405, 418. On this independent ground the convictions of Manning and Rymszewicz, in my judgment, cannot stand.

I hope, however, that the foregoing analysis of the evidence demonstrates not only the wisdom and fairness, but, as well, the practical necessity, of adhering to the rule of *Commonwealth* v. *Fuller,* which requires that there be a separate charge for each act which constitutes an offence. The amorphous catchall indictment here presented by the Attorney General, and now approved by the majority, illustrates the difficulties which follow a departure from that rule. Almost inevitably, at the trial, the evidence to support the conspiracy indictment will be, as it was here, superimposed upon, and applied to, the substantive indictment which is almost identical in its terms. But that is not the only evil. The substantive indictment itself, alleging as it does a continuing offence in the same terms as the conspiracy indictment, has *enabled the prosecution to use it independently as a dragnet to convict a defendant of every substantive offence committed by any other member of the group even though he had no part in it or even knowledge of it.* See *United States* v. *Sall,* 116 F. 2d. 745, 748 (3d Cir.), cited by the majority.

It seems to me, therefore, that the opinion of the majority is self-contradictory. On the one hand, it criticizes "the use of the conspiracy dragnet to convict a conspirator of every substantive offence committed by any other member of the group even though he had no part in it or even knowledge of it." On the other hand, it condones a super dragnet (the substantive indictment charging a continuing offence) which accomplishes the same unjust result by the same improper and unfair use of evidence.

It would seem that a type of pleading which thus fosters confusion and opens the door to injustice has no place in our law. An indictment which on its face virtually requires inadmissible evidence to support it should be quashed. Accordingly, in my opinion, to insure a fair and orderly trial, to reduce confusion in the minds of the jury, and to minimize judicial error, a trial judge has the duty to insist that the prosecution adhere to the time-tested and trial-tested rules of pleading.

3.  The final major point of difference with the majority centers on the holding in *Commonwealth* v. *Mannos,* 311 Mass. 94. The majority appear to say that, under the authority of the *Mannos* case, the evidence in the case before us warrants the conviction of Manning and Rymszewicz as principals in the crime of requesting a bribe. I cannot subscribe to that view.

To determine just what the court decided in the *Mannos* case requires an understanding of what the charges were and, equally important, what evidence was adduced to support the charges. Mannos, a private citizen, was charged as a principal jointly with Lyons, a public officer, in four indictments, each with several counts, with requesting and accepting bribes from architects and engineers employed by the city of Cambridge, all in violation of G. L. c. 268, § 8 (pp. 95–96, 107). Since the indictments were in the conjunctive, the Commonwealth could support them by proof of either the requests for, or the acceptance of, the bribes (pp. 112–113). The proof centered on the acceptance of the bribes. "Proof of the receipt of the bribes was sufficient to constitute the crime charged. The acceptance of each bribe constituted a separate offence" (p. 113). Convictions were had on all four indictments. The evidence showed that, before Lyons had approved any of the contracts, three architects, including one Greco, had each made a corrupt bargain with Mannos (p. 112) who, the jury could find, was acting as the agent of Lyons (p. 108). Although Mannos "had inaugurated and was active in carrying out the program which resulted in . . . [the] payments by

Greco to Lyons," he "was not present when payments were made to Lyons by Greco." This evidence, the court held, "would not support an indictment charging . . . [Mannos] as a principal." His convictions on the counts involving Greco were reversed (p. 110). On the other hand, Mannos's conviction as a principal was upheld on the indictments involving the other architects because "in arranging for the payment of bribes from the architects and engineers, in making the collections from them, *and in turning what was collected over to Lyons,* Mannos personally participated in *every essential step* and must be considered as a principal" (emphasis supplied) (pp. 109–110).

In the *Mannos* case the court was dealing, as we are here, "with a statute [G. L. c. 268, § 8] that expressly prohibits public officers from requesting or accepting bribes" (p. 108) and with an indictment charging both the public officer and the private citizen as principals. In criminal law, "one who aids and assists another person to commit an offence which only such other person can commit may be equally guilty with the latter *as a principal* or as an accessory before the fact, *depending upon the evidence showing his relation to the actual commission of the crime.* . . . In this Commonwealth, *the distinction between guilt as a principal and guilt as an accessory before the fact has always been recognized*" (citing authorities) (emphasis supplied) (p. 109). As distinguished from an accessory before the fact, a *principal* is "one who is *present at the commission of a felony* and is *aiding and assisting* the one who is actually committing the offence . . . ." (emphasis supplied) (p. 109).

Having the foregoing in mind, the true rule of the *Mannos* case, as I read it, is that where a private citizen is charged jointly with a public officer as a *principal* with the crime of requesting or receiving bribes, the evidence must show that the private citizen was *present and participating with the principal in the act which constitutes the offence charged,* namely the request for, or the acceptance of, the bribe. Such evidence as to Manning and Rymszewicz is entirely lacking in the case before us. Stasiun was not

present when Manning made the request in January; nor was he present when Rymszewicz made the request in May or June. Neither Manning nor Rymszewicz was present when Stasiun made his request in February, 1959, or in July, 1959.

To hold in the absence of such evidence, as do the majority, that Manning and Rymszewicz may nevertheless be convicted as principals would result in the judicial legislation of a new crime, namely, "Whoever corruptly requests or accepts a bribe on behalf of a public officer shall be punished." The Legislature has not defined such a crime. "There being no such provision in the statute, there is a strong implication, that none such was intended." Shaw, C.J., in *Commonwealth* v. *Willard,* 22 Pick. 476, 479. The implication is stronger in the case before us because of other reasons. Not only is there "no such provision in the statute" here, but G. L. c. 268, § 8, defines first the class of persons at whom the statute is aimed (public officers), and then, in prescribing the penalty, provides in mandatory language in the first phrase of the penalty clause that the offender "shall forfeit his office," thereby clearly indicating that the person punishable shall be within the defined class, namely, a public officer. Of importance also, it seems to me, are the provisions of St. 1962, c. 779, § 1, now G. L. c. 268A, dealing in part with the same subject matter. In the latter statute the classes of persons at whom the statute is aimed are carefully defined in § 1 (definitions) and, as so defined, are specifically referred to in the substantive sections which set out the acts which constitute the respective offences. For example, G. L. c. 268A, § 2 (b), provides, "Whoever, *being a state, county or municipal employee* . . . [the term employee includes, among others, an elected or appointed officer, G. L. c. 268A, § 1 (d), (g), (q)] corruptly asks . . . anything of value *for himself or for any other person* . . ." and § 3 (b) provides, "Whoever, *being a present or former* state, county or municipal employee . . . asks . . . anything of substantial value for himself for . . . any official act . . . by him" (emphasis supplied). It

appears to me therefore that the court sub silentio has created a new crime in the present case.

4.   I conclude with these observations:

a.   All of the troubles which attended the trial and our consideration of the case have flowed from a kind of indictment which has never been approved by this court. In the single instance when it was attempted, it was not tolerated. *Commonwealth* v. *Fuller,* 163 Mass. 499. Most of the trouble certainly would have been avoided by adherence to our simple, well established rules of criminal pleading.

b.   It was error not to quash the substantive indictment since it alleged an offence unknown to the law. "No court has jurisdiction to sentence a defendant for that which is not a crime. It is the duty of . . . [this] court to consider such a point of its own motion." Rugg, C.J., in *Commonwealth* v. *Andler,* 247 Mass. 580, 582. The defendants here have raised the question consistently. To require them to stand trial again for that which is not a crime would shock judicial conscience and result in an abuse of judicial process. See *Commonwealth* v. *Andler,* 247 Mass. 580, 582.

c.   It was error to deny the motions for directed verdicts. The prosecution failed to prove, as charged, the continuing offence.

d.   In any event, on the evidence, judgments should be entered for Manning and Rymszewicz on the substantive crime since (1) only one act has been proved against them, and (2) the act proved does not show that they acted as principals, as charged.

5.   Inasmuch as a new trial is to be had on the conspiracy indictment, the validity of which is not questioned, no useful purpose would be served by now discussing the convictions obtained under it.