## COMMONWEALTH *vs.* TABUE K. SMILEY.

Hampden. February 7, 2000. - May 12, 2000.

Present: MARSHALL, C.J., ABRAMS, LYNCH, GREANEY, IRELAND, & COWIN, JJ.

*Armed Assault in a Dwelling. Practice, Criminal,* Indictment, Assistance of counsel, Instructions to jury, Argument by prosecutor, Capital case. *Evidence,* Admissions and confessions, Relevancy and materiality, Credibility of witness. *Witness,* Credibility. *Joint Enterprise. Felony-Murder Rule. Robbery. Attempt.*

An indictment for armed assault in a dwelling on "occupants" was properly brought, and the prosecution was not required to bring a separate indictment for each separate assault on each occupant. [479-480]

A criminal defendant did not demonstrate that counsel whom he retained for a short period rendered ineffective assistance such that the statement the defendant gave to police after consulting with that attorney should have been suppressed. [480-482]

Evidence at a murder trial that the defendant was affiliated with a group called the "South Side Posse," some members of which were implicated in the crime, was properly admitted solely on the issue of joint venture with a contemporaneous limiting instruction and another instruction in the final charge. [482-484]

At a murder trial, the prosecutor's comments in closing argument were a reasonable response to defense counsel's attack on the credibility of a prosecution witness and, to the extent any comment was not in accord with the evidence, no substantial likelihood of a miscarriage of justice arose, in light of the judge's instruction to the jury that closing arguments are not evidence. [484-486]

At a murder trial, there was no error in the judge's denial of the defendant's request for an instruction pursuant to *Commonwealth* v. *Ciampa,* 406 Mass. 257 (1989), regarding the testimony of a codefendant who testified for the prosecution but not under any agreement with respect to the charges against him. [486-487]

At a murder trial, the judge's detailed instructions to the jury on withdrawal from or abandonment of the joint enterprise were not erroneous, and sufficiently conveyed to the jury that the defendant could have been a joint venturer in some of the series of crimes and not in others. [487-489]

At a murder trial, there was no error in the judge's instruction to the jury on the independence of the underlying felony to establish felony-murder. [489]

At a murder trial, evidence of the numerous assaults in a dwelling by the defendant and others was sufficient to support a conviction of murder in the first degree on a theory of felony-murder. [489]

At a criminal trial there was no error in the judge's instructions to the jury on the elements of armed robbery [489-490] or attempted armed robbery [490-491].

INDICTMENTS found and returned in the Superior Court Department on November 8, 1993, and September 29, 1994, respectively.

The cases were tried before *Francis X. Spina*, J., and a motion for a new trial, filed on November 28, 1997, was heard by *Judd J. Carhart*, J.

*John M. Thompson* for the defendant.

*Jane Davidson Montori*, Assistant District Attorney, for the Commonwealth.

ABRAMS, J. Convicted of murder in the first degree by reason of felony-murder, the defendant, Tabue Smiley, appeals.[1] He also appeals from the denial of his motion for a new trial. On appeal, the defendant challenges (1) one of the indictments against him; (2) the denial of his motion to suppress; (3) admission of evidence that he was a member of the "South Side Posse"; and (4) the jury instructions. He also asks this court to vacate his conviction of armed assault in a dwelling as duplicative. Finally, he requests relief pursuant to G. L. c. 278, § 33E. We vacate the conviction of armed assault in a dwelling. We affirm the other convictions. We conclude that there is no reason to grant the defendant a new trial or to enter a verdict of a lesser degree of guilt on his conviction of murder in the first degree. See G. L. c. 278, § 33E.

1. *Facts*. A jury could have found the following. On October 31, 1993, the defendant, Dennis Hardy, Fred Shinholster, Calvashon Johnson, and Shandell Redd planned to rob Oliver Edwards of drugs and money. To accomplish the robbery, they first went to Eric Williams's apartment to order drugs. Williams, who sold drugs for Edwards, paged Edwards and Edwards came to Williams's apartment. Subsequently, the defendant and others held Williams and Edwards at gunpoint and forced them to go to Edwards's apartment.

After arriving at Edwards's apartment, Hardy confined Wil-

---

[1]The defendant also was convicted of illegal possession of a firearm, two counts of kidnapping, and armed assault in a dwelling. The defendant does not argue any error with respect to the illegal possession of a firearm and kidnapping convictions.

liams in a closet. Hardy and others forced Edwards onto a couch in the living room with his girl friend, June Johnson, who had been present in the apartment when they entered. Hardy and Shinholster threatened Edwards and Johnson in order to get them to divulge the location of drugs and money in the apartment. Edwards eventually stated that there was cocaine in the basement. Redd and the defendant went to search the basement.

Hardy took Edwards to the basement stairs. He shot Edwards, causing Edwards to fall down the stairs. Hardy then returned to the living room and shot Johnson,[2] despite the defendant's protests. At one point, Hardy's pistol jammed, so he took the defendant's pistol. Hardy next returned to the basement and shot Edwards two more times. Hardy also shot Williams twice. Johnson and Williams both survived, but Edwards died from multiple gunshot wounds.

The defendant, Shinholster, and Johnson ran out of the apartment at the same time, before Hardy had finished his shooting rampage. They met up with Hardy and Redd at Rasheem Reid's house shortly thereafter. At Hardy's request, Shinholster hid the semiautomatic gun used earlier that night in a cemetery behind Reid's house.

A few days later, Shinholster turned himself in to the police and led them to the cemetery where police recovered the gun. On November 3, the defendant's mother engaged the services of Attorney Elton Williams to assist in the defendant's surrender. After consulting with Mr. Williams, the defendant gave a detailed statement to the police regarding the events of October 31. Mr. Williams served as the defendant's attorney for approximately four more weeks. He was subsequently replaced by appointed counsel.

2. *The indictment.* The defendant was indicted, inter alia, for armed assault in a dwelling. The indictment charged, in relevant part, that the defendant, "being armed with a dangerous weapon, namely a gun, did enter a dwelling house and while therein did assault the occupants with intent to commit a felony." The defendant notes that there were two occupants of the dwelling. He argues that the crime of armed assault in a dwelling is properly measured by the number of assaults within the dwelling. See *Commonwealth* v. *Levia,* 385 Mass. 345, 350-351 (1982). Thus, he contends, there were two separate crimes com-

---

[2]June Johnson suffered a total of five gunshot wounds.

mitted, one against Edwards and one against Johnson. Therefore, he concludes, the indictment improperly charged two crimes in a single count. See *Commonwealth* v. *Barbosa*, 421 Mass. 547, 550-553 (1995); *Commonwealth* v. *Levia, supra.* We disagree.

Although the Commonwealth could have sought separate indictments, it was not required to do so. See *Commonwealth* v. *Gunter*, 427 Mass. 259, 275 n.17 (1998) (where defendant assaulted multiple persons, "[i]t would have been *possible* for the Commonwealth to request that the grand jury return three separate indictments for the three separate assaults, in addition to the indictment for [the victim's] murder" [emphasis added]). See also *Commonwealth* v. *Selby*, 426 Mass. 168, 172 (1997) (after threatening several people with handgun and killing one victim, defendant was indicted and convicted of single count of armed assault in dwelling and felony-murder based on that felony). The defendant's reliance on *Levia* is misplaced because that case, too, *permits* the Commonwealth to request multiple indictments without *requiring* it to do so. *Commonwealth* v. *Levia, supra* at 351 (defendant "may" be indicted for multiple counts of robbery where there are multiple victims with protective interest in property). Here, the Commonwealth was within its discretion in requesting and receiving a single indictment for armed assault in a dwelling.

3. *The denial of the defendant's motion to suppress.* The defendant contends that the statement he gave to the police after consulting with Mr. Williams should be suppressed. He argues that his statement was the product of ineffective assistance of counsel. Specifically, he states that Mr. Williams failed to complete an adequate factual investigation. Further, he asserts that Mr. Williams provided inadequate and misleading legal advice, especially with respect to the consequences of making the statement. Finally, he states that Mr. Williams was ineffective because he failed to pursue the opportunity for the defendant to become a cooperating witness, thereby depriving the defendant of any benefit he may have gained from making his statement.

The defendant concedes that neither the statement nor testimony concerning it was presented at trial. He does, however, express concern that "the extent to which the confession was used in . . . cross-examination [of the defendant] is not clear." The defendant asserts that he was harmed most by virtue of the fact that a copy of the statement was given to

Shinholster, who provided devastating testimony at trial. He argues that it was fundamentally unfair for the Commonwealth to offer Shinholster's testimony. The defendant concludes that, because of Mr. Williams's shortcomings, he was denied effective assistance of counsel, and, thus, his motion to suppress was denied erroneously. We disagree.

The defendant's right to counsel is "of little value unless there is an expectation that counsel's assistance will be effective." *Commonwealth* v. *Griffin*, 404 Mass. 372, 374 (1989), quoting *Care and Protection of Stephen*, 401 Mass. 144, 149 (1987). In examining the defendant's claim that his counsel was ineffective, we accept the motion judge's subsidiary findings of fact absent clear error. *Commonwealth* v. *Yesilciman*, 406 Mass. 736, 743 (1990).

The motion judge here, who was also the trial judge, conducted a hearing at which the defendant, the defendant's mother, and Mr. Williams gave testimony. At the conclusion of the hearing, the judge made oral findings. He found that, when the defendant was en route to the police station with his mother and Mr. Williams, Mr. Williams advised the defendant not to make any statements to the police. Further, he found that the defendant wanted to cooperate with the prosecutor, and the defendant had initiated the subject himself. In addition, the judge found that Mr. Williams met with the defendant immediately before the defendant gave his statement to the police and "advised the defendant that he could be responsible for the homicide even though he never pulled the trigger himself."

The judge also found that the defendant did not receive any "bad" or incorrect advice. The judge made a specific finding that there was no ineffective assistance of counsel. Finally, he stated, "I . . . find that [Mr.] Williams advised the defendant of the consequences of making a statement to the police; that there was advice given and understood; that the defendant could be convicted of first degree murder on the felony murder theory as well as on the joint venture theory."

In making these findings, the judge, acting within his discretion, credited Mr. Williams's testimony over that of the defendant. See *Commonwealth* v. *Scott*, 430 Mass. 351, 355 (1999) ("The determination of the weight and credibility of the testimony is the function and responsibility of the judge who saw and heard the witnesses, and not of this court" [citations omitted]). We accept these findings because they are supported by the record. *Commonwealth* v. *Yesilciman, supra.*

These findings support the conclusion that the defendant was not denied effective assistance of counsel. Contrast *Commonwealth* v. *Chetwynde*, 31 Mass. App. Ct. 8, 12-14 (1991) (record did not support judge's finding that defendant received effective assistance where defendant weighed counsel's alleged misrepresentations in deciding to plead guilty); *Commonwealth* v. *Moreau*, 30 Mass. App. Ct. 677, 682 (1991), cert. denied, 502 U.S. 1049 (1992) (record did not support judge's conclusions that attorney's advice to confess did not constitute ineffective assistance of counsel). The motion to suppress was correctly denied.[3]

4. *The admission of testimony regarding the "South Side Posse."* During direct examination by the prosecutor, Springfield police Officer Peter Manolakis testified that the defendant was part of a group called the South Side Posse.[4] Trial counsel objected. After a discussion at sidebar, the judge admitted this evidence for the limited purpose of establishing that the defendant was a member of a group that included some of the other alleged perpetrators. When the questioning continued, Officer Manolakis testified as to where the group spent time, the names of some members of the group, the defendant's affiliation with the group, and the dress of the group. Immediately after Officer Manolakis finished his testimony regarding this topic, the judge gave a limiting instruction.[5] He gave a second

---

[3]The defendant also argues, for the first time on appeal, that the statement was made in the course of a plea negotiation and, thus, is inadmissible under Mass. R. Crim. P. 12 (f), 378 Mass. 870 (1979). We disagree. The defendant concedes that the prosecutor made no promises, commitments, or specific offers before the defendant made his statement. The defendant does not contend that he gave his statement only in consideration of a benefit offered by the prosecutor. Thus, there were no plea negotiations and the statement is not excluded by rule 12 (f). See *Commonwealth* v. *Wilson*, 430 Mass. 440, 443 (1999) (no plea negotiations where defendant did not condition his willingness to plead on fulfilment of some other obligation by the other side).

The defendant also complains that the Commonwealth unfairly induced him to make a confession without affording him the protection of rule 12 (f). Given the defendant's concession that the prosecutor made no promises, commitments, or specific offers, the Commonwealth could not have unfairly induced the defendant. This complaint has no merit.

[4]It was alternatively referred to as the "South End Posse" during Officer Manolakis's testimony.

[5]The judge stated: "Ladies and gentlemen, you have just heard some evidence that the defendant was a member of a particular group. That evidence can only be considered by you on the issue of joint venture, which I will

instruction during the final charge.[6]

The defendant first argues that admission of this evidence was erroneous because it was not relevant to any issue before the jury. He contends that it cannot be relevant because it is improper to infer conduct based on membership in a particular organization. See *Commonwealth* v. *Wolcott*, 28 Mass. App. Ct. 200, 210 n.16 (1990). Alternatively, the defendant argues that admission of this evidence was erroneous because it was more prejudicial than probative. The defendant argues that admission of this testimony was highly prejudicial because of the connotations of gang membership. He further alleges that it was prejudicial because it made the Commonwealth's key witness, Shinholster, more credible than the defendant because Officer Manolakis did not suggest that Shinholster was affiliated with the gang. The defendant contends that the questions served merely as a gratuitous attack on the defendant's character and

---

define for you later at the end of the trial.

"I'm not suggesting that any of this evidence is true, and I'm not suggesting any of the evidence is false, and I'm not suggesting how you should weigh this evidence. What I am telling you is you may only consider it on the question of whether the defendant was engaged in this joint venture with one or more other people, and the subject of that joint venture, or whether or not the subject of this joint venture involved the commission of one or more of the crimes that are the subject of this trial.

"The mere fact that somebody is involved with a group cannot be held against him. What you may use, if you choose, and it's entirely up to you, you may consider this evidence on the question only of whether or not a joint venture existed."

[6]The judge stated: "Now you have heard evidence the [d]efendant was a member of a particular group. I'm not saying he was, and I'm not saying he wasn't. All I'm telling you is during the course of trial I limited your use of that evidence, and I will remind you of that right now by further instructions. That evidence, whether you accept it, and it's up to you how you remember it to be, whether you accept it or not. If you do accept it, it may only be considered on the issue of joint venture, which I have just defined for you.

"I am not suggesting that this evidence is true or false or how you should weigh it. I'm telling you that you may only consider that evidence on the question of whether the [d]efendant was engaged in a joint venture with one or more other people in the commission of one or more crimes which are the subject of this trial. You may not use it for any other purpose. You may not use it to arouse any negative feelings about the [d]efendant, or suggest that he is guilty by association. You may only use it for purposes of determining whether or not there was any joint venture."

The judge repeated a substantially similar statement after the jury submitted a question.

undermined both the presumption of innocence and the defendant's withdrawal defense. We disagree.

"Evidence is relevant if it has a rational tendency to prove a material issue. Whether evidence is relevant in any particular instance, and whether the probative value of relevant evidence is outweighed by its prejudicial effect, are questions within the sound discretion of the judge. . . . [T]he judge's determination of these questions will be upheld on appeal absent palpable error" (citations omitted). *Commonwealth* v. *Valentin,* 420 Mass. 263, 270 (1995), quoting *Commonwealth* v. *Dunn,* 407 Mass. 798, 807 (1990).

The judge acted within his discretion in admitting this evidence. There was no error. See, e.g., *Commonwealth* v. *Mavredakis,* 430 Mass. 848, 862 (2000) (judge within her discretion in determining defendant's comment about his gang involvement was relevant to consciousness of guilt); *Commonwealth* v. *Maldonado,* 429 Mass. 502, 504 (1999) (no error in admission of gang evidence where Commonwealth's theory was that shootings were ordered by leader of gang of which defendant was member); *Commonwealth* v. *Perez,* 47 Mass. App. Ct. 605, 608 (1999) (evidence of defendants' gang membership relevant to defendants' motive and state of mind); *Commonwealth* v. *McQuade,* 46 Mass. App. Ct. 827, 829-830 (1999) (no error where, after Commonwealth had established that defendant and three others were members of gang, statements of others admitted).

In reaching this conclusion, we note that the judge gave a forceful limiting instruction immediately after the testimony and again during his final instructions. He repeated the limited use of the testimony a third time, in response to a question from the jury. Because the evidence admitted was probative on the issue of joint venture, and the possibility of prejudice was minimized by a strong jury instruction given thrice, we cannot say on the record before us that the judge's decision to admit the testimony was palpable error.

5. *The jury instructions.* The defendant argues that there were several errors in the jury instructions.

(a) *Instruction regarding Shinholster's testimony.* Shinholster testified as a prosecution witness. During direct examination, he testified that he was hopeful that the charges against him would be reduced as a result of his cooperation, but that the district attorney's office had not made any guarantees to him. He reiter-

ated this testimony on cross-examination. He also testified that the district attorney had told him to be truthful. Defense counsel vigorously attacked Shinholster's testimony during closing argument. The prosecutor responded to this attack. We set forth defense counsel's argument and the prosecutor's response in the margin.[7] The defendant now argues that the prosecutor employed Shinholster's testimony in a manner that the defendant characterizes as improper and misleading. We conclude that the Commonwealth's response was reasonable. *Commonwealth* v. *Chavis*, 415 Mass. 703, 713 (1993) ("the prosecutor may make a fair response to an attack on the credibility of a government witness").

The prosecutor also urged the jury to credit Shinholster's

---

[7]Defense counsel argued: "If there is a witness in this case who has a reason to come before you and not be completely truthful, it's Fred Shinholster. And why, ladies and gentlemen? Because he's charged right now and has been for a year, with the crime of murder in the first degree, . . . which he told you he understands is punishable by life imprisonment without ever having the possibility of parole. And he comes in here before you and sits on the witness stand, and he says, ['t]hey told me to be truthful, and I wanted to cooperate, and they said, [j]ust tell the truth.' Fair enough. Think about that.

"He's presented with an opportunity not to face murder in the first degree. He's presented with an opportunity not to face trial. He doesn't know what his deal's going to be, but he knows it will be taken into consideration. And so what he tells them has that thread of truth to it because he was there. He can place weapons in people's hands, and he can tell what happened."

Later, defense counsel added: "Fred Shinholster has a motive to provide false testimony. What better witness to provide some false testimony than that witness who was there, because he can provide some element of truth. Fred Shinholster is going to get a deal in this case. No question about that. He doesn't know what it is yet, that's true. He wasn't told that. But he's going to get cooperation, and the only way to get the next step to get some kind of deal, is to give information up. Ladies and gentlemen, you should scrutinize that information very, very closely."

In his summation, the prosecutor responded, in part: "Well to be sure, he's hoping that as he sat there and testified, coming forward truthfully and cooperating, there will be some benefit to him. . . .

"If [Shinholster] was going to make something up, why wouldn't it be along the lines of what [the defendant] said?

"And indeed, if he's going to say something about a second shooter and make it up, why say it was Tabue? Why not say it was Calvashon or Shandell? Why say it was his cousin against whom you heard there were no ill feelings between these two? Why say it was him unless that's exactly what happened? So considering the nature of his testimony, I suggest on that basis alone you can find him credible because of the way in which he admitted his own role in all of this."

testimony because it was consistent with that of Williams and Johnson although they "had no opportunity to compare notes or prepare their testimony." The defendant contends this statement is misleading because Shinholster had, in fact, reviewed Williams's and Johnson's statements before he made his own statement and before he testified.

The judge instructed the jurors that closing arguments are not evidence. He also instructed that "anything the lawyers might have said to you in their opening and closing statements, if those things don't correspond with your collective recollection of what the evidence was, then you must disregard what they said to you and rely on your collective memories." To the extent that the prosecutor's comment was not in accord with the evidence, there was no substantial likelihood of a miscarriage of justice. See *Commonwealth* v. *Freeman*, 430 Mass. 111, 119 (1999); *Commonwealth* v. *Ruddock*, 428 Mass. 288, 292 n.3 (1998).

The defendant also argues that, as a result of this testimony and the prosecutor's use of it, he was entitled to a *Ciampa* instruction regarding Shinholster's testimony. See *Commonwealth* v. *Ciampa*, 406 Mass. 257 (1989). Although defense counsel did not object when the judge gave a general instruction rather than the specific instruction requested, the issue was preserved because defense counsel requested the instruction in writing and in a conference with the judge. *Commonwealth* v. *Biancardi*, 421 Mass. 251, 253-254 (1995). Thus, we consider whether the judge committed error and, if so, whether the error was prejudicial. *Commonwealth* v. *Alphas*, 430 Mass. 8, 13-14 n.7 (1999). There was no error.

"The judge is not required to grant a particular instruction so long as the charge, as a whole, adequately covers the issue." *Commonwealth* v. *Daye*, 411 Mass. 719, 739 (1992), quoting *Commonwealth* v. *Anderson*, 396 Mass. 306, 316 (1985).

Here, the judge gave a credibility instruction without specifically mentioning Shinholster. He instructed the jury to "consider the person's motive for testifying, or whether the person displays any bias in testifying, or whether or not he or she has any interest in the outcome of the case, including the hope of receiving favorable treatment." He further instructed that "the person's interest in the outcome of the case is something you may consider, if you choose."

The judge's general charge regarding credibility was correct. We reach this conclusion in light of counsels' discussion of

credibility in their closing arguments, *Commonwealth* v. *Brousseau*, 421 Mass. 647, 654 (1996), *Commonwealth* v. *Daye, supra* at 739, and in light of the fact that Shinholster did not have an agreement, written or oral, with the government. See *Commonwealth* v. *Dixon*, 425 Mass. 223, 233 (1997) (no *Ciampa* instruction required where witness did not have an agreement with the government). Contrast *Commonwealth* v. *Meuse*, 423 Mass. 831, 832 (1996) (reversible error where prosecutor vouched for witness testifying pursuant to plea agreement and judge failed to give *Ciampa*-type instruction). The judge did not err in failing to give a specific instruction regarding Shinholster's testimony.

(b) *Instruction regarding withdrawal.* The defendant argues, without citing authority, that the judge erred in failing to instruct the jury that the timeliness of the defendant's withdrawal must be evaluated in relation to the timing of the murder. Noting that he was charged with multiple crimes, the defendant contends that the instruction did not indicate to the jury what crime had to have been "stoppable" in order for the withdrawal to be effective. Because trial counsel requested this instruction at trial, we consider whether the judge committed error and, if so, whether the error was prejudicial. There was no error.

"We look to the charge as a whole to determine whether it fairly instructs the jury." *Commonwealth* v. *Richardson*, 429 Mass. 182, 185 (1999), quoting *Commonwealth* v. *Raymond*, 424 Mass. 382, 386 (1997). "We consider what a 'reasonable juror could have interpreted the instruction' to mean." *Id.* The judge instructed the jury with respect to withdrawal as noted below.[8] In addition, he clearly explained that "it's possible [the defendant] could have been a joint venturer in some of the

---

[8]The judge stated, in part: "Now again, with respect to the law of joint venture, you have heard some evidence that the [d]efendant disengaged himself from activity or left at some point in time. The [d]efendant is not guilty of a crime committed by joint venture apart from, and I'm not talking about whether or not he himself, whether the Commonwealth has proved that he himself has committed these crimes, I'm talking about the theory under which the Commonwealth is saying he is guilty by joint venture. The [d]efendant is not guilty of a crime committed by joint venture if he withdrew or abandoned that joint venture in a timely and effective manner.

"A withdrawal is effective only if it was communicated to the other persons in the joint venture. That communication does not have to be oral, it can be by other means. It can be by his conduct or the conduct of other people, but if somehow it was reasonably understood in a timely manner that [the defendant] disengaged himself from some joint venture, I'm not saying that he was

crimes but not all of the crimes." Further, the judge gave a detailed instruction regarding felony-murder.[9]

"In discussing a person's abandonment of a joint enterprise so as to avoid guilt for a subsequent crime, we have said that 'there must be at least an appreciable interval between the alleged termination and the fatal shooting, a detachment from the enterprise before the shooting has become so probable that it cannot reasonably be stayed, and such notice or definite act of

---

involved in it, but if the Commonwealth has established a joint venture and there was evidence that [the defendant] disengaged himself from that, such disengagement is effective but only if it was communicated in some fashion, oral or otherwise, to the other persons involved in the joint venture or other person involved in the joint venture, and only if it was somehow communicated to them early enough that they have a reasonable opportunity to abandon the crime or the joint venture as well.

"If the withdrawal comes so late that the crime cannot be stopped, it's too late and it is ineffective. If there is evidence of withdrawal, the Commonwealth must prove beyond a reasonable doubt that the [d]efendant did not abandon or withdraw, before you can find him guilty under a joint venture theory."

The judge repeated a substantially similar instruction after conferring with both attorneys. He repeated a similar instruction a third time, in response to a question from the jury.

[9] He stated, in part: "[T]he Commonwealth is not required to prove that [the defendant] was the only cause of Oliver Edwards' death. The Commonwealth is required to prove beyond a reasonable doubt that [the defendant] caused the death in the sense that he directly and substantially set in motion a chain of events that produced the death, that the natural and conscious sequence in the [d]efendant['s] . . . actions would not have brought about the death of Oliver Edwards by themselves, without the intervention of some other person or events.

"The [d]efendant may still be held responsible as to the cause of death if two conditions are met, and they are as follows: number one, the [d]efendant's actions directly and substantially set in motion a natural and continuous sequence of events that caused the death; and number two, a reasonable person would have foreseen his actions could easily result in serious injury or death to someone in the position of Oliver Edwards. If those two conditions are proved beyond a reasonable doubt, then the defendant is responsible as the cause of death, even if there were other causes of death, even if there were other causes which contributed to some degree in producing the fatal result.

"On the other hand, the law does not consider the [d]efendant to be the cause of death if some other person or event was the direct and substantial cause of death, and the [d]efendant's actions were only a minor and remote link in the chain of events leading to the death. Similarly, if the death would not have occurred without the intervention of some other person or event, and a reasonable person in the same circumstances would not have foreseen the likely possibility of such a result, the law does not consider the [d]efendant's actions to be the cause of death."

detachment that other principals in the attempted crime have opportunity also to abandon it.' '' *Commonwealth* v. *Fickett*, 403 Mass. 194, 201 (1988), quoting *Commonwealth* v. *Greene*, 302 Mass. 547, 555 (1939).

In light of these comprehensive and clear instructions, we conclude that a reasonable juror would have understood that the defendant was being prosecuted for multiple crimes under a theory of joint venture. These instructions clearly establish that the defendant could "be found guilty as a joint venturer of an initial crime but then can effectively withdraw so as to avoid culpability for a subsequent crime." *Commonwealth* v. *Hogan*, 426 Mass. 424, 434 (1998). There was no error.

(c) *Instruction regarding armed assault in a dwelling.* The defendant next argues that the instruction regarding armed assault in a dwelling did not require the jury to find both armed assault and intent to commit a felony independent of the assault that resulted in the victim's death. The defendant further argues that all of the assaults merged with the initial assault on Edwards prior to entering his dwelling and therefore there was "no evidence of an armed assault on an occupant of [Edwards's home] independent of the effort to rob Edwards." Thus, he concludes, there was no support for a finding of felony-murder based on armed assault in a dwelling. These arguments have no merit.

Contrary to the defendant's claim, the judge clearly instructed the jurors regarding independence. He instructed that the felony-murder rule applies if the felony in question was separate from the act necessary to commit the unlawful killing. The judge further instructed the jury to "[l]ook to see if there was a separate felony which occurred aside from the acts of violence which led to the death of Oliver Edwards." There was no error.

In addition, there is no support for the defendant's claim that all the assaults in the dwelling merged with the initial assault on Edwards designed to gain entry into his dwelling. The defendant's contention is plainly wrong. *Commonwealth* v. *Christian*, 430 Mass. 552, 556 (2000) ("[i]t is the intent to do that conduct [here stealing from (one of the victims)] that serves as the substitute for the malice requirement of murder"). Assaults do not merge simply because the assaults serve to further the goal of the defendant's felonious plan.

(d) *Instructions regarding armed robbery and attempted armed robbery.* The defendant argues that "armed robbery" was

never independently defined and that "attempt" was misdefined. The defendant stresses the significance of the attempt definition because, he contends, the felony-murder conviction predicated on armed robbery likely rested on a determination of attempt because the Commonwealth presented little evidence that any property was stolen. As a result of this incorrect definition, the defendant concludes, the jury may have convicted him without proof that his conduct, or that of his coventurers, constituted actual attempt. He further argues that this improper definition undermined his defense of withdrawal. See *Commonwealth* v. *Ortiz*, 408 Mass. 463, 470-473 (1990). We disagree.

Because the defendant raised this issue in his motion for a new trial, and the judge considered it, we review the claim as if there was an objection made at trial. *Commonwealth* v. *Hallet*, 427 Mass. 552, 554 (1998). The motion judge, who was not the trial judge, found that the trial judge "instructed that the jury must find four elements[:] that the defendant was armed with a dangerous weapon[;] that the defendant either intended to apply actual force and violence to the body of the victim or intended to use threatening words or gestures to put the victim in fear[;] that the defendant intended to take money or other property with the intention of stealing it[;] and that the defendant intended to take the money or property from the person or immediate control of the victim." The motion judge concluded that the trial judge instructed the jury as to the requisite elements of armed robbery. The motion judge further found that the instruction on attempt, "when viewed with the instruction as a whole, correctly instructed on what constituted an attempt to commit armed robbery." A review of the charge reveals that these findings are well supported by the record. There was no error.

(e) *Instruction on attempted armed robbery.* The defendant alleges that the jury were not instructed that, on the facts of this case and the instructions given, each of the elements of armed robbery and attempted armed robbery were wholly included in the elements of armed assault in a dwelling. He notes that the defendant was never indicted for armed robbery or attempted armed robbery. Thus, he argues that neither armed robbery nor attempted armed robbery may be an independent underlying felony for the felony-murder conviction. The defendant's claim has no merit.

Armed robbery or attempted armed robbery are proper

underlying felonies to support a conviction of murder in the first degree based on a theory of felony-murder even though a defendant is not indicted for either crime. *Commonwealth* v. *Christian*, 430 Mass. 552, 556 (2000) ("[w]e can envision no situation in which an armed robbery would not support a conviction of felony-murder"). "An underlying but uncharged felony may serve as the basis for a felony-murder conviction." *Commonwealth* v. *Eagles*, 419 Mass. 825, 839 n.16 (1995), citing *Commonwealth* v. *Matchett*, 386 Mass. 492, 497-498 & n.7 (1982). There was no error.

The defendant also alleges that the single indictment for armed assault in a dwelling, see Part 1, *supra*, permitted a nonunanimous jury verdict because the jurors were not required to indicate whether they relied on the assault on Edwards or on Johnson as the basis of the felony-murder conviction. The defendant reasons that some jurors might have relied on the armed assault against Edwards in the home and others might have relied on the armed assault of Johnson in the home.

We need not reach the defendant's argument because the jurors also found the defendant guilty of murder in the first degree based on a theory of armed robbery as the predicate felony. The judge specifically limited the armed robbery instruction to Oliver Edwards as the alleged victim. There was ample evidence to support the conviction of murder in the first degree by reason of felony-murder based on the armed robbery of Edwards.[10]

6. *Relief pursuant to G. L. c. 278, § 33E.* We have considered the entire record on the conviction of murder in the first degree. See G. L. c. 278, § 33E. We conclude that the defendant is not entitled to a new trial or to entry of a lesser degree of guilt.

The conviction of murder in the first degree is affirmed. The convictions of illegal possession of a firearm and kidnapping are affirmed. The conviction of armed assault in a dwelling is vacated. The order denying the defendant's motion for a new trial is affirmed.

*So ordered.*

[10]The defendant argues, and the Commonwealth concedes, that the defendant's conviction for armed assault in a dwelling, which was filed with the defendant's consent, should be vacated on remand. See *Commonwealth* v. *Doucette*, 430 Mass. 461, 471 (1999); *Commonwealth* v. *Berry*, 420 Mass. 95, 113 (1995).