NOTICE: All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports. If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-13353

COMMONWEALTH  vs.  JOSEPH SULLIVAN
(and a companion case[1]).


Hampden.     February 6, 2023. - May 16, 2023.

Present:  Budd, C.J., Gaziano, Lowy, Cypher, Kafker, Wendlandt,
& Georges, JJ.


Misleading a Police Officer.  Grand Jury.  Constitutional Law,
     Grand jury, Indictment.



     Indictments found and returned in the Superior Court
Department on August 5, 2019.

     Motions to dismiss were heard by Mark D. Mason, J.

     The Supreme Judicial Court on its own initiative
transferred the cases from the Appeals Court.


     Jared B. Cohen, Assistant Attorney General (Stephen J.
Carley & Dean A. Mazzone, Assistant Attorneys General, also
present) for the Commonwealth.
     Daniel D. Kelly for Joseph Sullivan.
     Edward B. Fogarty for Derrick Gentry-Mitchell.




_____

     [1] Commonwealth  vs.  Derrick Gentry-Mitchell.

WENDLANDT, J.  The allegations in this case center on an alleged cover-up of an April 2015 altercation between off-duty Springfield police department (SPD) officers and four Black men (victims) near Nathan Bill's Bar & Restaurant in Springfield (Nathan Bill's).  The victims were injured, at least one severely so; the Commonwealth contends that the off-duty officers assaulted the victims following a verbal argument at the bar.  Investigations of the alleged misconduct of the off-duty officers by local, State, and Federal authorities ensued; but, the Commonwealth maintains, the investigators were hampered by the false and misleading statements of responding SPD officers, including the defendant Derrick Gentry-Mitchell, and of other eyewitnesses, including the defendant Joseph Sullivan, who co-owned Nathan Bill's.  According to the Commonwealth, the tangled web of deception by the defendants, and others, lasted years and included misleading testimony before the grand jury.

This case presents the question whether, where the grand jury were presented with numerous misleading statements made on various dates spanning several years to different investigators, an indictment charging a single count of misleading investigators, in violation of G. L. c. 268, § 13B, is defective under art. 12 of the Declaration of Rights of the Massachusetts Constitution, insofar as it poses the possibility that the defendants may be convicted of a felony for which the grand jury

did not indict.  Because the indictments charge the essential crime of willfully misleading investigators to impede the investigation of the same underlying event -- the off-duty police officers' alleged assault of the victim -- and because the misleading statements constituted a continuing course of conduct actuated by a single, continuing impulse or intent, or general scheme to conceal that event, we conclude that the indictments do not violate art. 12.  Accordingly, we vacate the motion judge's order dismissing the indictments.

1.  Background.  We recite the facts presented to the grand jury in the light most favorable to the Commonwealth, reserving some details for subsequent discussion.  See Commonwealth v. Stirlacci, 483 Mass. 775, 780 (2020) ("An appellate court reviews the evidence underlying a grand jury indictment in the light most favorable to the Commonwealth").

a.  Assault.  According to the Commonwealth, on the evening of April 7, 2015, and into the early morning of April 8, 2015, several off-duty SPD officers gathered at Nathan Bill's.  After midnight, the officers argued with the victims.  The defendant Joseph Sullivan, a co-owner and manager of Nathan Bill's, intervened and asked one of the victims to leave the bar.

Shortly after 1 A.M., SPD officers responded to a report of a disturbance outside of Nathan Bill's.  Among the responding officers were the defendant Gentry-Mitchell and his partner,

Jeremy Rivas, who together were on patrol that night. When the SPD officers arrived, the victims were standing in the bar's parking lot, and other bar patrons and staff, including several off-duty SPD officers, were standing outside the bar's entrance. Sullivan spoke with some of the responding officers. Following a brief interaction, the victims walked away from the bar, the other bar patrons and staff went back inside Nathan Bill's, and the responding SPD officers left the scene.

Approximately one hour later, SPD officers responded to a 911 call outside a convenience store located down the street from Nathan Bill's. The responding SPD officers, including Gentry-Mitchell and Rivas, found the same victims there that they had seen earlier that evening outside of Nathan Bill's. Two of the victims were lying on the ground. One was unconscious. He had suffered a concussion, broken leg, dislocated ankle, torn ligaments, bruised head, and split lip; four of his teeth were knocked loose. The other victims were bruised; one had been shocked by a "taser" or "stun gun."

One of the victims told responding SPD officers: "We just got jumped by [the] guys from the bar. They just walked back to the bar." An emergency medical technician (EMT) at the scene later testified that, within earshot of the responding officers, including presumably Gentry-Mitchell, the victims were loudly "going on about how they just got into a bar fight and had just

gotten beaten up by off-duty police officers." One of the victims later testified before the grand jury that the off-duty officers involved in the assault had used a racial slur before attacking the victims; the victims were Black men.

Rivas also testified before the grand jury. Rivas confirmed that he learned while responding to the scene outside the convenience store that the victims had been attacked by the same individuals with whom the victims had argued at Nathan Bill's, that off-duty officers were at the bar, and that the attackers "could have been police officers."

Rivas also testified that he and Gentry-Mitchell accompanied one victim back to the Nathan Bill's parking lot. When they arrived, they saw John Sullivan, a co-owner of the bar,[2] and Jose Diaz, an off-duty SPD officer. According to Rivas, Diaz appeared to be drunk and stated that he had lost his keys; Rivas and Gentry-Mitchell helped Diaz search for the keys while walking back toward the convenience store. Along the walk, Diaz stated that he and "some of the guys" had been involved in a fight outside of Nathan Bill's, and that he had been "knocked out cold" by one of the "[B]lack guys." Gentry-

---

[2] John Sullivan and the defendant Joseph Sullivan are not related, but they co-own and comanage Nathan Bill's. We refer to Joseph Sullivan as "Sullivan" in this opinion.

Mitchell was within ten feet of Diaz when Diaz made these statements.

Rivas further testified that, later during their shift, he and Gentry-Mitchell spoke about the evening's events. Rivas relayed to Gentry-Mitchell that off-duty officers may have been involved in the assault on the victims.

b. Investigations. The victims repeatedly reported the assault to the SPD. Two local investigations ensued. One investigation was conducted by SPD's major crimes unit (MCU); the other investigation was conducted by SPD's internal investigations unit (IIU).[3]

In November 2016, one of the victims reported the incident and alleged cover-up to the Federal Bureau of Investigation (FBI).[4] The FBI referred the matter to the Massachusetts Attorney General's office (AGO), and the two entities continued a joint investigation. In early 2018, the FBI and AGO brought their investigation before a Statewide grand jury. Over the course of grand jury proceedings lasting several months, more

---

[3] The MCU referred the results of its investigation to the office of the district attorney for the Hampden district, which declined to bring criminal charges related to the April 2015 events.

[4] After FBI agents in the Springfield regional field office investigated the matter, the United States Attorney's Office declined to pursue Federal criminal charges.

than three dozen witnesses testified, including, as explained infra, Gentry-Mitchell and Sullivan.

c. Misleading conduct. i. Gentry-Mitchell. On July 22, 2015, Gentry-Mitchell submitted a report to MCU investigators; on August 16, 2015, he submitted a report to IIU investigators.[5] On February 22, 2018, he testified before the grand jury. On these three occasions, the Commonwealth alleges, Gentry-Mitchell falsely stated that he did not hear or see anything to indicate that off-duty officers might have been involved in the assault. Gentry-Mitchell did not disclose, in any of his three statements, that he saw Diaz after the assault, or that he learned any information from Diaz, Rivas, or any other source about the off-duty officers' involvement in the incident. These omissions, the Commonwealth alleges, were false and misleading, and they hampered the investigations into the April 2015 assaults.

ii. Sullivan. The Commonwealth further alleges that Sullivan also misled investigators. On June 19, 2015, in an interview with an SPD detective, Sullivan gave a statement in connection with the MCU investigation. On February 24, 2017, and May 16, 2017, Sullivan was interviewed by FBI agents. On March 15, 2018, he testified before the grand jury and made a

---

[5] Gentry-Mitchell did not file a police report on the night of the April 2015 incident.

statement to State police officers, FBI agents, and AGO investigators prior to his testimony. The Commonwealth alleges that, on these four dates, Sullivan made false and misleading statements to investigators about the April 2015 incident, including about whether he could identify any patrons in Nathan Bill's that evening; whether he was aware that an altercation had taken place at the bar between two groups of patrons that evening; whether he knew the off-duty officers at the bar that evening; whether he noticed or was aware that any officers left the bar after the victims had left or whether the officers returned shortly thereafter; and whether he was aware that John Sullivan also left the bar, with the off-duty officers, and returned shortly thereafter.

The Commonwealth also alleges that Sullivan stated falsely that he called a taxicab for the victims when they left the bar and that he saw the victims enter and exit the taxicab (thereby suggesting misleadingly that the victims chose to remain at the scene instead of leaving). That factual account was not consistent with video evidence from a security camera outside Nathan Bill's, or with the testimony of multiple eyewitnesses, including the taxicab driver.

d. Grand jury indictments. In 2019, the grand jury returned indictments against sixteen individuals. Among those indicted were Gentry-Mitchell and Sullivan. Gentry-Mitchell was

indicted on one count of perjury, one count of misleading

investigators,[6] and one count of making a false police report.

Sullivan was indicted on one count of perjury and one count of

misleading investigators.[7]

    e.  <u>Motions to dismiss</u>.  Relevant to the present appeal,

the defendants each filed a motion to dismiss the indictments

---

[6] The indictment against Gentry-Mitchell for the offense of misleading investigators, in violation of G. L. c. 268, § 13B, provided:

> "on or about the 22nd day of July in the year two thousand fifteen at Springfield, in the County of Hampden, <u>or</u> on or about the 16th day of August in the year two thousand fifteen at Springfield, in the County of Hampden aforesaid, <u>or</u> on or about the 22nd day of February in the year two thousand eighteen at Worcester, in the County of Worcester, [Gentry-Mitchell] did directly or indirectly, willfully mislead a police officer, investigator, or grand juror with the intent to impede, obstruct, delay, harm, punish or otherwise interfere thereby with a criminal proceeding" (emphases added).

[7] The indictment against Sullivan for the offense of misleading investigators, in violation of G. L. c. 268, § 13B, stated:

> "on or about the 19th day of June in the year two thousand fifteen at Springfield, in the County of Hampden, <u>or</u> on or about the 24th day of February in the year two thousand seventeen at Springfield, in the County of Hampden aforesaid, <u>or</u> on or about the 16th day of May in the year two thousand seventeen at Springfield, in the County of Hampden aforesaid, <u>or</u> on or about the 15th day of March in the year two thousand eighteen at Worcester, in the County of Worcester, [Sullivan] did directly or indirectly, willfully mislead a police officer, federal agent, investigator, or grand juror with the intent to impede, obstruct, delay, harm, punish or otherwise interfere thereby with a criminal proceeding" (emphases added).

charging them with misleading investigators; they contended that the indictments violated art. 12.[8] The Commonwealth opposed the motions, maintaining that the indictments were proper because they alleged that the defendants' misleading statements were part of a general scheme or single course of criminal conduct to mislead investigators regarding the April 2015 incident. In the alternative, the Commonwealth moved to amend the indictments.

Following a nonevidentiary hearing, the motion judge dismissed the indictments charging misleading investigators, relying on Commonwealth v. Barbosa, 421 Mass. 547 (1995). In particular, the motion judge concluded that, because the indictments charged multiple acts in a single count, they presented the possibility that the defendants might be convicted of a felony offense without first being indicted of the same by a grand jury. He declined to amend the indictments, concluding that any amendment would not cure the defect.

The Commonwealth timely appealed. We transferred the matters to this court sua sponte.[9]

---

[8] Gentry-Mitchell and Sullivan each also filed motions to dismiss the indictments for lack of probable cause; each motion was denied. The motion judge also denied Gentry-Mitchell's motion to dismiss the indictments for alleged loss or destruction of exculpatory evidence.

[9] The defendants' cases were consolidated for the purposes of this appeal.

2.  _Analysis_.  We review determinations on issues of law in motions to dismiss de novo.  Commonwealth v. Ilya I., 470 Mass. 625, 627 (2015).

a.  _Article 12 framework_.  We have long construed art. 12[10] to require "that no one may be convicted of a crime punishable by a term in the State prison without first being indicted for that crime by a grand jury."  Barbosa, 421 Mass. at 549.  See Jones v. Robbins, 8 Gray 329, 344 (1857) (art. 12 right is "justly regarded as one of the securities to the innocent against hasty, malicious[,] and oppressive public prosecutions, and as one of the ancient immunities and privileges of English liberty").  See, e.g., Commonwealth v. Smith, 459 Mass. 538, 543-544 (2011) (vacating conviction as violating art. 12 because indictment charged single count of armed home invasion, but did not specify alleged victim or home, where grand jury and trial jury were presented with evidence of two separate, unrelated armed home invasions occurring on same specified date).

Accordingly, the offense as to which the grand jury have found probable cause, and thus have charged in an indictment, must be the same as the offense the Commonwealth seeks to prove at trial.  See Barbosa, 421 Mass. at 551, quoting Commonwealth

---

[10] Article 12 provides, in relevant part, that "[n]o subject shall be held to answer for any crimes or offence, until the same is fully and plainly, substantially and formally, described to him."

v. Dean, 109 Mass. 349, 352 (1872) ("It is the duty of the Commonwealth to prove the identity of the offence charged in the indictment with that on which it seeks to convict before the jury of trials").

i. Unrelated, separate acts. In Barbosa, 421 Mass. at 551, we applied art. 12 in the context of an indictment charging a single offense where the grand jury heard multiple, unrelated acts, each of which separately could constitute the charged offense. In particular, the grand jury had been presented with evidence that the defendant had engaged in two cocaine distribution transactions on the same date. Id. at 550. Other than occurring on the same date, the two transactions were unrelated, involving two different buyers and sharing neither a common intent nor a common theme. Id. at 548, 550. Problematically, the grand jury returned only one indictment that failed to specify which of the two transactions formed the basis for the charged offense; instead, "on its face, the indictment appear[ed] to refer to a single act of distributing cocaine." Id. at 551. Given that both incidents occurred on the same day, the inclusion of a date in the indictment did not clarify this ambiguity. See id. at 550 ("The result may be explained one of two ways. First, the grand jury may have found probable cause to indict the defendant for one of the . . . transactions, but not the other. Second, they may have intended

the indictment to encompass both transactions").  See also

Campagna v. Commonwealth, 454 Mass. 1006, 1007-1008 (2009) (in

Barbosa, it "was impossible to tell which of the two incidents

gave rise to the indictment").  The defendant's pretrial motion

to dismiss the indictment in violation of art. 12 was denied.[11]

Barbosa, supra at 549, 553.

At trial, the jury found the defendant guilty of cocaine

distribution.  Id. at 549.  Like the grand jury, the jury were

presented with evidence of the defendant's two separate and

unrelated cocaine distributions, creating "the very real

possibility that the defendant was convicted of a crime for

which he was not indicted by a grand jury."[12]  Id. at 551.  For

example, the jury could have convicted the defendant based on

---

[11] The defendant moved to dismiss the indictment on the
basis of "duplicity," which the court understood to preserve the
defendant's objection to the indictment on the basis that it
charged "several separate offenses in a single count."  Barbosa,
421 Mass. at 553 & n.10, quoting R.M. Kantrowitz & R. Witkin,
Criminal Defense Motions § 9.7 (1991).

[12] The ambiguity could not be resolved by a bill of
particulars.  Barbosa, 421 Mass. at 553.  The defendant was
aware of the two incidents presented to the grand jury.  Id.  A
bill of particulars would not have told the defendant which of
the two formed the basis for the indictment.  Id.

Neither could the defect be cured by requiring the
Commonwealth to elect which of the two transactions it sought to
pursue.  Id. at 553 n.7 ("In the case that the grand jury had
indicted on only one of the incidents, to require the
Commonwealth to choose one incident could still have resulted in
a trial for an unindicted offense").

the second transaction whereas the grand jury may have indicted the defendant on the first transaction, and vice versa.[13]  Id. at 550.

Because "there [was] a substantial risk that the defendant was convicted of a crime for which he was not indicted by a grand jury," Barbosa, supra at 554, the convictions "violated the requirement of art. 12 that punishment for 'infamous crimes' only be imposed after indictment by a grand jury," id. at 549. We concluded that we could not "apply a harmless error standard" to such a constitutional violation.  Id. at 554, quoting Stirone v. United States, 361 U.S. 212, 217 (1960) ("depriving defendant of 'right to be tried only on charges presented in an indictment returned by a grand jury' is 'far too serious to be treated as

---

[13] We considered whether a specific unanimity jury instruction could cure the constitutional error.  Barbosa, 421 Mass. at 552.  A general unanimity instruction "informs the jury that the verdict must be unanimous," and a specific unanimity instruction "indicates to the jury that they must be unanimous as to which specific act constitutes the offense charged." Commonwealth v. Conefrey, 420 Mass. 508, 512 (1995).  See id. at 513 ("where evidence of separate incidents is offered to the jury and any one incident could support a conviction, a general unanimity instruction may not suffice to ensure that the jury actually [do] reach a unanimous verdict").  We concluded that a specific unanimity instruction would not cure the defect because the intent of the grand jury remained unclear.  Barbosa, supra. The jurors at trial "may have reached unanimity only on a transaction for which the defendant was not indicted," so "the defendant still may have been 'held to answer' for a crime not set forth in the indictment."  Id.  Compare Dean, 109 Mass. at 352 (where parties knew which of two assaults formed basis of indictment, proper jury instruction could have cured defect).

nothing more than a variance and then dismissed as harmless error'").  As such, we vacated the convictions.  Barbosa, supra.

ii.  Continuing offenses occurring at divers times and places.  Critically, however, we differentiated the indictment in Barbosa, which charged two separate, unrelated drug distribution transactions and thus violated art. 12, from an indictment charging a "continuing offense occurring at several times and places over a period of time," which does not.  Barbosa, 421 Mass. at 550-551, citing G. L. c. 277, § 32.[14]

A.  General practice offense.  Such offenses include "continuing" offenses, which comprise a crime that is "the general practice, throughout the period of time alleged."  Commonwealth v. Stasiun, 349 Mass. 38, 44 (1965).  See, e.g., Commonwealth v. Runge, 231 Mass. 598, 599-600 (1919) (practicing medicine unlawfully); Commonwealth v. Peretz, 212 Mass. 253, 254 (1912) (deriving support from earnings of prostitute); Wells v.

_____

[14] General Laws c. 277, § 32, provides:

"An allegation that a crime was committed or that certain acts were done during a certain period of time next before the finding of the indictment shall be a sufficient allegation that the crime alleged was committed or that the acts alleged were done on divers days and times within that period."

Commonwealth, 12 Gray 326, 327 (1859) (keeping house of ill fame).[15,16]

B.  Offense characterized by shared intent, pattern, or scheme.  As we noted in Barbosa, "continuing offense[s] occurring at several times and places over a period of time" also include sexual offenses based on several acts.  Barbosa, 421 Mass. at 551 & n.6, citing Commonwealth v. Conefrey, 420 Mass. 508, 511 n.6, 514 (1995) (indictment charging one count of indecent assault and battery on child "at divers times and dates during" 1986 proper despite victim's description of eight different acts of sexual assaults), and Commonwealth v. Comtois, 399 Mass. 668, 669-671 (1987) (affirming convictions for sexual assault of one victim "on divers dates between September 21, 1982, and October 4, 1983," and another victim on "divers dates between October 1, 1982, and February 27, 1983" where each

_____

[15] For continuing offenses that comprise a general practice, time is an essential component.  Double jeopardy protects a defendant from the government subsequently bringing an indictment covering time periods that overlap with the alleged time period, and at trial, only evidence of the offense from the time period alleged in the indictment is permitted.  See Commonwealth v. Megna, 59 Mass. App. Ct. 511, 513-514 (2003) ("Since time is an essential element of a continuing offense, the defendant can never again be punished for engaging in the same criminal practice during the time period described in the indictment").

[16] We agree with the defendants that the indictments charging the misleading of investigators do not allege a continuing offense comprising a general practice.

victim testified to multiple incidents).[17]  Those types of offenses are characterized by a shared intent, pattern, or scheme, and thus are distinguishable from the two unrelated cocaine distributions in Barbosa.[18]

C.  Single criminal episode.  Nor is the art. 12 violation present in Barbosa mirrored where multiple acts are charged in an indictment as part of a single, continuing criminal episode occurring close in time.  See Commonwealth v. Smiley, 431 Mass. 477, 479-480 (2000) (considering and rejecting art. 12 challenge and holding that single indictment charging one count of armed assault in dwelling was proper even though existence of two victims would have permitted separate indictments); Commonwealth v. Crowder, 49 Mass. App. Ct. 720, 721-722 (2000) (rejecting art. 12 challenge to indictment alleging single count of aggravated rape where grand jury heard evidence of four acts of forcible penetration because there was "only a single episode involving the same parties" and multiple acts of penetration "are part of a continuing criminal episode").

---

[17] To be sure, neither Conefrey nor Comtois discussed art. 12.  See Barbosa, 421 Mass. at 552-553.

[18] At trial, such an indictment may require a specific unanimity instruction to ensure the jury are unanimous as to the particular act underlying the offense.  See Conefrey, 420 Mass. at 511-513 (vacating conviction where judge gave general unanimity instruction, not specific unanimity instruction, because "evidence of separate incidents [was] offered to the jury and any one incident could support a conviction").

Our decision in Smiley is instructive. Smiley, 431 Mass. at 479-480. There, the court considered a single indictment charging that the defendant "being armed with a dangerous weapon, namely a gun, did enter a dwelling house and while therein did assault the occupants with intent to commit a felony." Id. at 479. The record before the grand jury supported that the defendant had committed the charged armed assaults against two victims. Id. Relying on Barbosa, the defendant contended that the Commonwealth was required to bring two separate indictments, one for each victim who had been assaulted. Id. at 479-480. The court acknowledged that the Commonwealth could have sought two indictments. Id. at 480. The offense, however, had transpired as one continuing criminal episode whereby the defendant entered a dwelling and therein assaulted both victims. Id. at 478-479. We rejected the defendant's art. 12 challenge, concluding instead that the Commonwealth was within its discretion in requesting and receiving a single indictment for armed assault in a dwelling. Id. at 480.

D. Single, continuing criminal impulse or intent, or general scheme. Similarly, we have concluded that an indictment is proper where it alleges discrete acts, occurring over a period of time, that are "actuated by a single, continuing criminal impulse or intent or are pursuant to the execution of"

a "general scheme." Stasiun, 349 Mass. at 43-45 (concluding that indictment properly charged solicitation, in violation of G. L. [Ter. Ed.] c. 268, § 8, where it stated that solicitation occurred "at various times between January 31, 1959, and July 31, 1959, the exact dates being . . . unknown"). Applying this principle in Stasiun, we concluded that wrongful solicitation, comprised of multiple requests for a bribe over the course of months, could be charged as a single offense, id. at 45; in so doing, we disagreed with the dissent that the indictment violated art. 12, id. at 57 (Kirk, J., dissenting).

There, the victim desired to enter into a lease agreement to rent space in his building to the registry of motor vehicles. Id. at 40-41. Over the course of several months, the defendants (one of whom was a State official) requested that the victim pay a bribe to the official for the official's favorable vote on a lease. Id. at 41-42. All told, several such requests were made; the requests, which varied in the amount of the bribe sought, were made in separate locations, at different times, and by different combinations of the defendants. Id. at 41-42, 44. Yet, despite the separate incidents, each of which constituted a wrongful solicitation, in violation of the statutory prohibition, a single indictment issued, charging the defendants with one count of wrongful solicitation. Id. at 44.

We rejected the dissent's contention that the indictment violated art. 12.[19]  The indictment was proper; we explained that "whether the request was repeated in one meeting, or in several meetings on a single day, or in meetings separated by days or weeks rather than minutes, each separate request was an integral part of the wrongful criminal solicitation, from one person, of one payment for one favor."  Id.  "Solicitation of a bribe [could] take the form of protracted negotiations," and "[a]n offer to give or accept a bribe, while it is outstanding, has a continuing effect."  Id. at 45.  Additionally, "the fact that all the solicitations related to the approval of the . . . lease . . . support[ed] the conclusion that there was one overall scheme."  Id.  The "essential" charge of the indictment was that the defendants on divers occasions solicited a bribe for the State official's vote on the lease.[20]  Id. at 47.  See Commonwealth v. Lee, 149 Mass. 179, 184 (1889) (indictment charging crime of obtaining goods "from time to time" by false pretense was proper because "the false pretense was a continuing

_____

[19] The court rejected the conclusion of the dissenting justice that the indictment was "bad for duplicity in charging more than one offence in the same count."  See Stasiun, 349 Mass. at 57 (Kirk, J., dissenting).

[20] Accordingly, we concluded, any defendant tried on that charge could not be tried again for that offense; if a defendant, charged with a single wrong occurring on multiple occasions, is acquitted on the charge, that "will end the matter in all of its aspects as to him."  Stasiun, 349 Mass. at 47.

one, and applicable to each delivery"); Commonwealth v. Megna, 59 Mass. App. Ct. 511, 514-515 (2003) (indictment properly charged defendant with "a single wrong," namely extortion, "a discrete crime, but with a continuing criminal impulse or intent or in the pursuit of a general scheme").

    b.  Application to misleading investigators charge. Similarly to Stasiun, 349 Mass. at 45, in the present action, the record before the grand jury warranted the conclusion that the defendants' discrete acts -- namely, their false or misleading statements to investigators -- were "actuated by a single, continuing criminal impulse or intent or . . . pursuant to the execution of a general . . . scheme"; accordingly, the acts may be charged pursuant to a single count of misleading investigators, in violation of G. L. c. 268, § 13B, as amended through St. 2010, c. 256, § 120.[21]  In particular, as presented

---

[21] General Laws c. 268, § 13B (1) (c) (iii), (iv), (v), as amended through St. 2010, c. 256, § 120, made it a felony to

> "willfully . . . mislead[] . . . a judge, . . . grand juror, prosecutor, police officer, federal agent, investigator . . . [or] a person who is furthering a . . . criminal investigation, grand jury proceeding, trial, [or] other criminal proceeding of any type. . . with the intent to impede, obstruct, delay, . . . or otherwise interfere thereby, or do so with reckless disregard, with such a proceeding."

The statute was amended in 2018, in relevant part, to make it a felony to

to the grand jury, the Commonwealth's theory was that the defendants willfully misled investigators -- the MCU, IIU, FBI, AGO, and grand jury -- to cover up the alleged misconduct of off-duty SPD officers in connection with the April 2015 assaults on the victims. The defendants, according to the Commonwealth, made false and misleading statements that together wove an inaccurate narrative in order to hide the truth from investigators.[22] Cf. Stasiun, 349 Mass. at 45. Although each misleading statement could form a separate charge for misleading investigators, the Commonwealth is not precluded by art. 12 from proceeding under one indictment, charging the essential crime of willfully misleading investigators to cover up the off-duty SPD officers' role in the assault on the victims on April 2015.[23]

---

> "willfully . . . mislead[] . . . another person who is a . . . judge, . . . grand juror, . . . police officer, . . . federal agent, [or] investigator, . . . with the intent to or with reckless disregard for the fact that it may . . . impede, obstruct, delay, prevent or otherwise interfere with: a criminal investigation at any stage, [including] a grand jury proceeding."

G. L. c. 268, § 13B (b), as appearing in St. 2018, c. 69, § 155.

[22] That the misleading statements are, in some particulars, inconsistent with one another is of no moment. See, e.g., Stasiun, 349 Mass. at 43-45 (permitting one solicitation indictment despite record showing three different bribery requests).

[23] For this reason, the use of the disjunctive "or" to separate the dates on which the defendants' alleged misleading statements were made does not alter the analysis. These dates are not an essential element of the crime. See Megna, 59 Mass.

The defendants mistakenly contend that because the alleged misleading statements were made to different investigators, art. 12 requires that the Commonwealth proceed by separate indictments. Their contention is unsupported by our jurisprudence that allows indictments of continuing offenses occurring at divers times and places, discussed supra, or by the statutory language of the crime under which they were indicted. The statute setting forth the offense of misleading an investigator defined an "investigator"[24] to include a "group of

_____

App. Ct. at 514. By setting forth the dates in the indictments, the Commonwealth provided notice to the defendants of the misleading acts underlying the essential crime charged -- namely, that the defendants misled investigators by continuously telling a misleading narrative regarding the alleged assaults on April 2015. Cf. Commonwealth v. Dingle, 73 Mass. App. Ct. 274, 277-282 (2008) ("or" in indictment did not create ambiguity where indictment was sufficient to enable defendant to understand charge and prepare his defense).

[24] During the relevant time period, the statute defined an "investigator" as

"an individual or group of individuals lawfully authorized by a department or agency of the federal government, or any political subdivision thereof, or a department or agency of the [C]ommonwealth, or any political subdivision thereof, to conduct or engage in an investigation of, prosecution for, or defense of a violation of the laws of the United States or of the [C]ommonwealth in the course of his official duties."

G. L. c. 268, § 13B (2), as amended through St. 2010, c. 256, § 120. The definition was modified slightly in 2018 to include gender-neutral language. See G. L. c. 268, § 13B (a), as appearing in St. 2018, c. 69, § 155 ("in the course of such individual's or group's official duties").

individuals" authorized to perform the function of "conduct[ing] or engag[ing] in an investigation" of "a violation of the law[]."[25]  G. L. c. 268, § 13B (2), as amended through St. 2010, c. 256, § 120.  Thus, a violation of G. L. c. 268, § 13B, can be based on conduct of misleading multiple investigators.  Article 12's requirement is satisfied where the misstatements were actuated by a single, continuing criminal impulse or intent or pursuant to the execution of a general scheme; here, the Commonwealth contends that the defendants' conduct underlay the general scheme to conceal the alleged misconduct of the off-duty SPD officers in April 2015.[26]  Nothing in art. 12 precludes the Commonwealth from so proceeding.  See, e.g., Smiley, 431 Mass. at 480 (indictment could charge armed assault on multiple

---

[25] Contrary to the defendants' argument, neither art. 12 nor G. L. c. 268, § 13B, requires a grand jury to indict for conduct misleading State officials investigating a violation of State law separately from conduct misleading Federal officials investigating a violation of Federal law.  The statute concerns acts that impede "investigation[s]," regardless of whether an otherwise unimpeded investigation might have led to a Federal or State charge.

[26] Gentry-Mitchell's assertion, without citation to any material in the record, that "the Commonwealth brought separate, distinct indictable offenses and not a continuing offense" is belied by the grand jury's decision to return one indictment for the continuing actions of the defendants each aimed at hiding the April 2015 events.

victims where offense could be characterized as occurring during one criminal episode).[27,28]

3. Conclusion. Accordingly, we reverse the order allowing the defendants' motions to dismiss the indictments and remand for further proceedings.

So ordered.

---

[27] Given the Commonwealth's choice to proceed on this theory, double jeopardy would limit any conviction that results to one count of misleading investigators, even if multiple misleading acts were found by the jury. See Commonwealth v. Rollins, 470 Mass. 66, 74 (2014). Moreover, the Commonwealth would be precluded from prosecuting the defendants again for the same crime based on conduct preceding the indictments. See Stasiun, 349 Mass. at 45, 47 (any defendant tried on charge of soliciting bribery actuated with single, continuing criminal impulse or intent, or under general scheme, "could not again be tried for that offence").

[28] Because we conclude that the indictments were proper, we need not reach the Commonwealth's alternative argument that the motion judge erred in denying the Commonwealth's motion to amend the indictments.